228 N.W.2d 551 (1975)
MINNESOTA STATE COLLEGE BOARD, et al., Respondents,
v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent-below, Amicus Curiae,
Minnesota Federation of Teachers, Appellant,
Inter-Faculty Organization, Respondent,
Minnesota Education Association, Respondent,
American Association of University Professors, Respondent.
No. 45587.
Supreme Court of Minnesota.
April 11, 1975.
*552 Peterson Engberg & Peterson, Minneapolis, for Minn. Fed. of Teachers.
Warren Spannaus, Atty. Gen., Peter W. Sipkins, Sol. Gen., Richard Mark, Asst. Sol. Gen., St. Paul, for Pub. Emp. Rel. Bd.
Peterson, Popovich, Knutson & Flynn, St. Paul, for Minn. State College Bd., and others.
LeVander, Gillen, Miller & Magnuson, So. St. Paul, for Inter-Faculty.
*553 Oppenheimer, Wolff, Foster, Shepard & Donnelly and Eric Miller, St. Paul, for Minn. Ed. Assoc.
Lindquist & Vennum, Eugene Keating and Ronald L. Rollins, Minneapolis, for Univ. Professors.
Considered and decided by the court en banc.
PER CURIAM.
This is an appeal from an order and judgment of the Ramsey County District Court, Second Judicial District, determining that the appropriate bargaining unit for faculty members employed at the seven state colleges is a single state-wide unit. We affirm.
The Minnesota State College System is comprised of campuses at seven separate locations, including Bemidji, Mankato, Moorhead, Marshall, Winona, St. Cloud and St. Paul. The total student enrollment at the various institutions is approximately 33,000 students, while approximately 2,000 persons are employed as faculty and similar unclassified personnel at these seven state colleges. The crux of the instant action is that these faculty members are seeking a determination of the appropriate bargaining unit to implement their collective bargaining purposes. Such a unit determination is a necessary preliminary to the determination of the exclusive representative for employees pursuant to Minn.St. 179.61 to 179.76, the Public Employment Labor Relations Act of 1971 (hereafter PELRA).
The procedural history of this action spans a period of nearly three years. On May 24, 1972, the Inter-Faculty Organization (hereafter IFO) and the Minnesota State College Board (hereafter SCB) filed a joint petition with the director of the Bureau of Mediation Services (hereafter BMS), pursuant to Minn.St. 179.67. The petition sought certification of the IFO as the exclusive representative of all faculty members within the state college system. Objections to the petition were filed by the Minnesota Federation of Teachers (hereafter MFT) and the American Association of University Professors (hereafter AAUP). As a result, a hearing was conducted by Vern E. Buck, the director, on August 15, 1972, to determine the appropriate unit. Representatives of the SCB, MFT (the appellant here), AAUP, IFO, and the Minnesota Education Association (hereafter MEA) appeared, examined witnesses and submitted exhibits and written briefs.
The director, on January 22, 1973, issued an order which determined that:
"* * * a state-wide unit of all state colleges for the purpose of negotiating conditions of employment for the faculty constitutes an appropriate unit unless challenged by more than 50% of the faculty members of any individual college; and, if so challenged, consideration would then be given."
It appears that no appeal was taken from this order.
Difficulties arose when, throughout the latter part of 1972 and early 1973, IFO, as this exclusive representative of the state-wide faculty, commenced negotiations with the State College Board. Negotiations were halted pursuant to a February 15, 1973, order of the new director of the Bureau of Mediation Services, Mr. Charles A. Swanson. The order essentially prohibited further negotiations between IFO and SCB until an appropriate bargaining unit could be determined and the exclusive representative certified. This order was issued pending determination of the validity of the petition of MFT (appellant), filed February 9, 1973, which sought a determination that Moorhead State was an appropriate bargaining unit and that it be identified as the representative of that unit. A further petition was filed by MFT in February 1973, also seeking a determination of Southwest State as an appropriate bargaining unit and of MFT as exclusive representative of the faculty at Southwest State College.
On March 12, 1973, the IFO filed an amendment to its petition for certification *554 with Director Swanson. The essence of the petition was that it sought a representative election to determine the exclusive representative. On March 15, 1973, the SCB withdrew from its joint petition of May 24, 1972, filed with the director in conjunction with the IFO.
On March 16, 1973, Director Swanson issued an order concluding that the order of January 22, 1973, determining a state-wide unit be "without force and effect."[1] The March 16, 1973, order also contained provisions that (1) the petitions of the IFO and the MFT be consolidated for hearing on March 20, 1973, in Moorhead to determine the appropriate bargaining unit; (2) that IFO's amended petition be designated as a petition for election pursuant to Minn.St. 179.67, subd. 4; (3) that the petitions of MFT be treated as a petition for election with one unit proposed at Moorhead and another at Southwest; and, finally, (4) that all parties could meet and negotiate to the end that SCB could grant salary increases to faculty members, but no written agreements might be reached until certification of an exclusive representative had occurred.
Hearings were held on March 20, 29, and 30, 1973, for a determination as to whether a single state-wide unit or the individual colleges constituted the appropriate geographic bargaining unit. On May 30, 1973, the AAUP filed a petition for determination of an appropriate unit on a state-wide basis and for its certification as the exclusive representative of the state college faculty. The petition stated that the AAUP had the support of 30 percent of those it chose to represent. Minn.St. 179.67, subd. 4.
On August 15, 1973, Director Swanson issued the order of the Bureau of Mediation Services determining that:
"Separate and distinct bargaining units at each of the state colleges are the appropriate units for the faculty members employed in the State College System * * *. This geographic unit determination is final and is an appealable determination within the meaning of Minn.St. 179.72, subd. 3(b)."
Pursuant to Minn.St. 179.72, subd. 3(b), an appeal from this order was taken to the Public Employment Relations Board (hereafter PERB) by the IFO, SCB, MEA and AAUP, each advocating a state-wide unit. MFT favored separate units at Moorhead and Southwest. De novo hearings were conducted on October 8, 9 and 19, 1973, after which the parties submitted written briefs. In a 3-2 decision, the order of PERB, issued April 8, 1974, stated:
"Each State College is the appropriate unit for representation of faculty members."
Appeal to the Ramsey County District Court, pursuant to Minn.St. 15.0424, was taken by the SCB and the State of Minnesota, Department of Personnel, John J. Jackson, Commissioner. The IFO and the MEA appeared and joined in the petition for review, while the AAUP also appeared on the appeal from the PERB decision. MFT appeared in support of the PERB decision.
PERB moved for judgment on the pleadings on the basis that its decision was not subject to judicial review under the Administrative Procedure Act, and IFO moved to disallow affirmative recognition of the PERB throughout the proceedings. The Honorable Ronald E. Hachey denied both motions nunc pro tunc by order dated December 2, 1974.
The matter was tried on September 26, 1974, before the Honorable John W. Graff following a stipulation that it be submitted upon written briefs of the parties and the entire record of all previous hearings and determinations.
In an order for judgment dated December 6, 1974, and entered December 11, 1974, *555 incorporating the court's memorandum opinion of November 13, 1974, the decision of the PERB was reversed. The court concluded that:
"4. The appropriate geographical bargaining unit for members of the faculty employed at the seven state colleges is a state-wide system. The conclusion is supported by substantial evidence in view of the entire record as submitted."
The court also specifically found that the conclusion of the PERB that the president of each of the seven state colleges is the appointing authority pursuant to Minn.St. 179.74 is incorrect as a matter of law, and that, as a matter of law, the SCB is the statutory appointing authority.
1. We must initially examine the position submitted by the PERB, as amicus curiae, that the district court is without jurisdiction under the Administrative Procedure Act to review an appropriate bargaining unit determination rendered by the PERB. Judicial review was taken of the April 8, 1974, decision of the PERB pursuant to Minn.St. 15.0424 and 179.72, subd. 4. It was asserted at the district court level, by the MFT, that any review should have been taken by conventional certiorari procedures and that the language of Minn.St. 15.0424, which excludes from judicial review final decisions of the director of the BMS, applies only to the extent that it establishes other permissive forms of review. MFT has abandoned this contention upon appeal, but it has instead been advanced by PERB.
PERB relies upon this court's determination in Nemo v. Local Joint Executive Board, 227 Minn. 263, 35 N.W.2d 337 (1948), that:
"While care must be exercised in using decisions of the National Labor Relations Board as authority in construing our act [Minn. Labor Relations Act, Minn.St. 179.01 to 179.17], for the reason that there are differences in the two acts, the rationale of decisions under the federal act is applicable to cases arising under our act insofar as the provisions of the two acts are similar or the objects or purposes to be attained are the same." (227 Minn. at 270, 35 N.W.2d at 342.)
Expanding this rationale, PERB asserts that the principle of nonreviewability at this level espoused by the United States Supreme Court in Boire v. Greyhound Corporation, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), is controlling. The court concluded that:
"* * * in the normal course of events Board orders in certification proceedings under § 9(c) [NLRA] are not directly reviewable in the courts." (376 U.S. 476, 84 S.Ct. at 896, 11 L.Ed.2d 852.)
Reviewability, the court stated, is only possible at the point where the employer refuses to bargain and the NLRB charges the employer with the unfair labor practice of refusal to bargain with an authorized representative.
It is undisputed that § 9 of the National Labor Relations Act makes no provision, express or implied, for review of a certification decision of the NLRB, but rather limits the review afforded by § 10 to orders of the Board prohibiting unfair labor practices. To equate these provisions with those of the PELRA to conclude that judicial review is not authorized in the instant case, is not possible under the Nemo v. Local Joint Executive Board, supra, standard, for in this respect the two Acts are not sufficiently similar to allow such an application.
Minn.St. 15.0424, subd. 1,[2] provides that "any person aggrieved by a final decision in *556 a contested case of any agency" is entitled to judicial review. Exceptions are imposed by this statute which include, among others, a prohibition against judicial review of a decision of the director of mediation services. An examination of Minn.St. 1971, § 179.72, subd. 4, applicable at the time of the appeal, evidences the reason for not allowing this judicial review of decisions of the director of mediation services, in that such review is strictly within the power or scope of the PERB.[3] Further, the board, under § 179.72, subd. 4, is required to utilize Minn.St. Ch. 15 in promulgating its rules of review.[4] This exemplifies an intent to subject the PERB to the statutory guidelines of this chapter.
PERB neither expressly nor impliedly contends that the definition of the term "agency"[5] has not been satisfied, so as to base its conclusion of non-reviewability upon the ground that it exists outside the purview of Minn.St. 15.0424. Further, that the parties to this action are persons aggrieved[6] within the meaning of this statute was demonstrated to the lower court's satisfaction by evidence and consideration of the possible increased costs to faculty members of multiple-unit bargaining and possible employee competition fostered by an individual-units determination. There has been no challenge to or allegation that the decision of the PERB is other than a "final decision" as required by Minn.St. 15.0424.
In construing a statutory scheme quite similar to that before us, the court in Civil Service Employees Assoc. v. Helsby, 31 A.D.2d 325, 329, 297 N.Y.S.2d 813, 817 (1969), in determining that judicial review of unit determinations prior to certification was proper, stated:
"Nothing in the Taylor Law or the CPLR makes the certification of an employee organization a prerequisite to judicial review of the determination establishing separate negotiating units * * *. The units deemed to be appropriate by the board are as final now as they will be upon certification * * *.
"The argument that the determination of the Board establishing the five negotiating units should be reviewed only after certification * * * is contrary to prompt disposition of a dispute where a party is aggrieved as of the moment of the determination.
"Judicial review at this time may avoid costly and time-consuming intermediate procedures. * * * Resolution of the issues in this proceeding at the earliest possible moment is in the best interest of the State and its employees. Unless there is some statutory prohibition, there is no reason to defer judicial review."
See also, Wakshull v. Helsby, 35 A.D.2d 183, 315 N.Y.S.2d 371 (1970); County of Gloucester, Board of Chosen Freeholders v. Public *557 Employment Relations Comm., 107 N.J. Super. 150, 257 A.2d 712 (1969).
The comprehensive nature of the statutes discussed and the PELRA as a whole indicate that the legislature has attempted to emulate the explicit procedures of the NLRA, with several notable exceptions. Included among these exceptions are those sections of the PELRA, absent in the NLRA, which expressly provide for judicial review of final decisions of various agencies and boards and which strictly except those agencies to which these procedures will not apply. Without doubt the PERB has not been excepted from these statutory procedures and its decision may therefore be subject to judicial review.
Thus, although the NLRA does not provide for direct review of unit bargaining determinations, the jurisdiction of the district court is based upon the PELRA, which does authorize judicial review of administrative decisions.
2. It is then necessary to determine whether the "appointing authority" for all state college system faculty members within the meaning of Minn.St. 179.74 is the SCB or the seven individual state college presidents. The resolution of this issue is germane to the ultimate question before us as to the propriety of the appropriate bargaining unit determination.
There appears to be little, if any, disagreement that the SCB is initially statutorily empowered as the "appointing authority." However, the conflict arises over the issue of whether the SCB may delegate this power and whether, under the facts, it has delegated this power to the seven individual state college presidents. The PERB concluded that such a delegation was made and this determination was reversed by the district court.
Minn.St. 179.65 provides that public employees organized in appropriate bargaining units may negotiate the terms and conditions of their employment. The scope of PELRA includes all public employers and employees and the Act sets forth specific criteria to be used by the director in determining an appropriate bargaining unit. Minn.St. 179.71, subd. 3, provides, in part:
"The director shall determine appropriate units. In determining the appropriate unit he shall take into consideration, along with other relevant factors, the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, involvement of professions and skilled crafts and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, and the recommendation of the parties, and shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives."
A specific exception to this general language was created by Minn.St. 179.74, subd. 4, as to state employees with respect to the appropriate bargaining unit, as follows:
"* * * the director of mediation services shall define appropriate units of state employees as all the employees under the same appointing authority except where professional, geographical or other considerations affecting employment relations clearly require appropriate units of some other composition. * * *"
It is presumed that the legislature intended, by this distinction, to provide for broad and large-scale bargaining units under one appointing authority to allow for comprehensive and efficient bargaining.[7] The PERB decision would give credence to seven separate appointing authorities and would, without comment at this time, provide *558 for a partial decentralization of the state college system.
The definition for the term "appointing authority" is found in Minn.St. 43.01, subd. 11, a meaning specifically adopted by the PELRA in Minn.St. 179.74, subd. 1, which states:
"`Appointing authority' means the appointing officer or authority of any state office or department."
An examination of Minn.St. 136.03 reveals that the SCB has a general grant of this authority, by its provision that the state colleges are under the management, jurisdiction and control of the SCB. Further powers are set forth in Minn.St. 136.11 and 136.12; however it is the language of Minn.St. 136.14 which is relevant to this determination, and provides as follows:
"The state college board shall have the educational management, supervision, and control of the state colleges and of all property appertaining thereto. It shall appoint all presidents, teachers, and other necessary employees therein and fix their salaries. It shall prescribe courses of study, conditions of admission, prepare and confer diplomas, report graduates of the state college department, and adopt suitable rules and regulations for the colleges. It shall, as a whole or by committee, visit and thoroughly inspect the grounds, buildings, modes of instruction, discipline, and management of each college at least once in each year. It shall report to the governor and the legislature, on or before November 15 in each even-numbered year, the condition, wants, and prospects of each college with recommendations for its improvement."
It is therefore clear that the SCB is the appointing authority within the meaning of Minn.St. 43.01, subd. 11. Further, in opinions issued by the Attorney General's Office, the provision has been interpreted as designating the SCB as the ultimate authority or head of all colleges for all educational matters.[8]
The focal challenge is reached by the appellant MFT's assertion that there has been a delegation of this appointing authority. However, we must conclude that even assuming a delegation, the control retained by the board is sufficient to uphold its function as appointing authority within the comprehensive PELRA. The April 8, 1974, decision of the PERB states that the SCB has made a complete delegation of its appointing authority to the president of each college, SCB Rule 602, and that therefore, "each president is the lawful appointing authority for faculty members of his respective college." SCB Rule 602 provides in pertinent part:
"* * * the President is ultimately responsible for recruiting, appointing, retaining, removing, and imposing sanctions on; granting salary increases, tenure, and promotion to; and defining the duties of, all persons employed by the College, including members of the faculty and administrative officers, * * *. The provisions of this sub-section constitute a delegation of the Board's power as set forth in Minnesota Statutes. (M.S. 1969, 136.14.) This delegation is made in accordance with Minnesota Statutes (M.S. 1969, 15.06)."
The district court concluded that in order to so hold, the PERB must have assumed that the SCB's delegation of some appointing authority to the respective presidents was a complete divestment of all authority in this area granted to it by the legislature. Reliance was placed upon a portion of SCB Rule 302, which generally outlines the duties and responsibilities of the SCB. The last sentence of that rule operates to impliedly define the duration and scope of this delegated authority, by providing:
"Any duty assigned or power delegated to an individual or agency within the State College System by the Board may be resumed by the Board or reassigned or *559 redelegated by the Board subject only to the provision that the Board must act in accordance with applicable statutes and these Governing Rules."
The district court concluded that there has not been a complete delegation here, as appellant MFT would suggest. Instead, a comprehensive reading of established SCB Rules indicates that any delegation made is still subject to the overriding control of the board.[9] Further, Minn.St. 15.06, under which the SCB made its delegation, provides in part:
"* * * the commissioner or head of any state department or agency shall have the following powers:
* * * * * *
"(2) To delegate to any of his subordinate officers or employees the exercise of such of his powers or duties as he may deem advisable, subject to his control; provided, that every such delegation shall be made by written order, filed with the secretary of state;"[10] (Italics supplied.)
The district court correctly interpreted this statute to mean that only a delegation of the exercise of the power, rather than the complete power itself, is permitted by the qualifying language that such an exercise remains "subject to the control" of the SCB.
There has not been any judicial interpretation of Minn.St. 179.74, discussing the one appointing authority with regard to state employees. However, the parties to this appeal seek interpretative assistance by analogy from the cases of Worzella v. Board of Regents of Education, 77 S.D. 447, 93 N.W.2d 411 (1958); Posin v. State Board of Higher Education, 86 N.W.2d 31 (N.D. 1957); and State ex rel. Anderson v. Bellows, 287 Minn. 373, 179 N.W.2d 307 (1970).
In Worzella, the South Dakota Supreme Court was petitioned for a writ of mandamus to compel the state board of regents to reinstate the petitioner as a professor or head of a department at a state college. The court considered that the power of the board of regents under the state constitution and statutes to employ or dismiss faculty and other employees at all institutions under the board's control could not be delegated as a complete surrender. The court reasoned that although the statutes empowered the board to enact rules necessary for management of the institutions within its control, the scope of such rules must be limited to custom and reasonableness, a standard far short of a complete delegation of all of its powers. The board may only delegate limited authority. The court viewed the attempted delegation in Worzella as an unlawful encroachment upon the board's constitutional and statutory power of control over the college.
The appellant would distinguish Worzella and declare it inapplicable to the instant case on the basis that the power of the SCB in Minnesota is strictly statutory, without constitutional guidelines. To so conclude would be to destroy the precedential control of the SCB by stating that its retention of supervisory control is totally ineffective and that the effect of any delegation would be to remove all authority with regard to the delegated power from the SCB. Such reasoning seems totally illogical when examining the comprehensive framework of the relevant statutes.
We must conclude, after a consideration of the subject legislation and regulations of the SCB, that the board may delegate its authority to the extent that practical, *560 supervisory functions are placed in the hands of the individual college presidents. However, to construe this delegation in broader terms would be to condone an action of the SCB which would partially remove from its power the very purpose for which it was createdi. e., the general control of the state college system. Rather, we construe the numerous reservations of authority by the SCB as indicating an intent to make substantially less than a complete delegation.
Our decision is based upon a variety of factors implementing the legislative attempt to centralize authority in the SCB to enable efficient coordination of the state colleges within its control. Examples of this attempt are the comprehensive reservation by the SCB of amendment powers and the statutory directive that, absent clear evidence that appropriate units of some other composition are required, the appropriate bargaining unit for state employees shall consist of "all the employees under the same appointing authority." Minn.St. 179.74, subd. 4. Further, the inception of the SCB itself evidences an intent to foster this uniformity.
As a practical matter, it seems clear that the SCB would be completely inundated if burdened with consideration and approval of each employment contract pending. To facilitate efficiency, the SCB delegatory rules are presumably intended to implement powers of the board, as opposed to substituting college presidents, in this particular case, as the controlling unit. With these considerations in mind, we, in satisfying legislative intent and resolving practical difficulties, hold that the State College Board is the appointing authority, that it has merely delegated the implementation of its duties to the college presidents to promote an efficient state college system, and that such a delegation is not a complete divestiture of its supervisory function as the appointing authority.
3. In reviewing the determination of the director of the BMS, PERB was required to implement a standard upon its review of the decision of the director of mediation services, upon a de novo hearing. Minn.St. 179.74, subd. 4, requires that state employees be organized in a bargaining unit under their appointing authority unless professional, geographical or other considerations clearly require units of other composition. PERB held that such other factors warranted the finding that individual bargaining units at the seven colleges were required.
The scope of judicial review of the PERB decision is limited by Minn.St. 15.0425, which establishes six alternative grounds upon which a court may reverse or modify the decision if such a ruling has prejudiced substantial rights of the petitioners. Among such grounds is that the decision is "(e) Unsupported by substantial evidence in view of the entire record as submitted."
As construed in Minneapolis Van and Warehouse Co. v. St. Paul Terminal Warehouse Co., 288 Minn. 294, 299, 180 N.W.2d 175, 178 (1970), the test of
"* * * substantial evidence is more than `a scintilla' and is `such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' § 29.02. The main inquiry by the district court is `whether on the record * * * [the commission] could reasonably make the finding.' § 29.01. While the test is `vague, rather than precise' and the `intensity of review' may vary from case to case, § 29.11, the `test is the same as the test on review of a jury verdict, but the review is narrower than the review of the findings of a judge sitting without a jury,' § 29.01, the latter being governed by the `clearly erroneous' test. § 29.11. The burden is upon the appellant to establish that the findings of the commission are not supported by the evidence in the record, considered in its entirety. If the evidence is conflicting or the undisputed facts permit more than one inference to be drawn, the findings of the commission may not be upset and the *561 district court may not substitute its judgment for that of the commission."
See, also, Gibson v. Civil Service Board, 285 Minn. 123, 171 N.W.2d 712 (1969); Quinn Distributing Co. Inc. v. Quast Transfer, Inc., 288 Minn. 442, 181 N.W.2d 696 (1970).
Utilizing this standard, the district court reversed, concluding that the decision of the PERB that
"professional, geographical or other considerations affecting employment relations clearly require appropriate bargaining units at each state college"
was unsupported by substantial evidence in view of the entire record as submitted. Such a finding was not based upon the district court's ability to determine which of the two alternative units was more properly suited to the group of employees.
A review of the extensive evidence of record here indicates that the district court's order must be affirmed.
Minn.St. 179.71, subd. 3, enumerates suggested criteria which, by judicial construction, may be interpreted to encompass the "other considerations" mentioned in Minn.St. 179.74, subd. 4. Included within these criteria is that the director "* * * shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives." As discussed in the dissent of one member of the PERB, which reasoning was joined in by the other dissent:
"Moreover, the employer and three out of the four employee representatives all agree that the appropriate unit is the system-wide unit. Since those are the parties who may in the future have to agree upon a compact on which their relationship will be governed, I feel strongly that great weight must be given to their wishes. Importantly, there is considerable testimony in the record, adduced by the appellants, establishing a rather substantial community of interest among the professionals at the various campuses."
The appellant MFT exhaustively reviews the factors upon which its contention that individual bargaining units are appropriate is based. Its conclusion is that since these considerations are for the most part within the discretion and diversity of the individual colleges, it would be pointless to predicate collective bargaining upon one state-wide unit.
Appellant further contends that the mere filing of petitions is sufficient evidence to show the interest of the petitioners in seeking individual units. However, the record indicates that 3 of 4 employee representatives and the employer favor state-wide unit representation, to vitiate the implied claim of MFT that the parties themselves favor the individual units.
The appellant concludes that since Minn.St. 179.74, subd. 4, permits the governor, subject to satisfying the statutory prerequisites, to direct that negotiations be conducted in a common proceeding, the sole way to preserve "local governance" is by individual units which would also allow for and encourage the negotiation of common state-wide issues. Citing the Penn. Labor Relations Board v. State Colleges and Indiana University of Penn., PLRB Case No. C-1986-C, January 17, 1973, for the theory that there was no obligation to negotiate at the local level of 14 college campuses and that the only negotiation in which they could engage was on a state-wide basis.
The purpose behind the PELRA and its incidents promoting collective bargaining is that those engaged in common occupations, in the instant case faculty members at the state colleges, with common goals and problems should bargain together for particular demands. Obviously, the Act and its statutory coordinates attempt to eliminate the "overfragmentation" which might result from the certification of individual bargaining units. PLRB v. State Colleges and Indiana University of Penn., supra.
Upon the record before the district court, there was little direct testimony in favor of *562 individual campus units; of the 13 witnesses testifying before the PERB, all but one favored a state-wide bargaining unit. Rather, there was cross-examination testimony to the effect that there were local problems, local adaptations and different administrative policies in effect at the several state colleges. Further, cross-examination reflected diverse geographical locations, various dissimilar college constitutions and administrative problems at the different institutions. Although such testimony purported to challenge the propriety of a state-wide system, it appears that the district court viewed the substantial evidence as supporting a state-wide organization. The conclusion must be that these local variances evidenced here will not vitiate an otherwise proper state-wide system.
It would be impossible to summarize the voluminous testimony presented here. However, of important consideration in the record are the following factors:
(1) The legislature has moved to coordinate the entire state-wide college system under the auspices of the State College Board and has therefore indicated an intent that uniformity be established.
(2) The SCB has implemented this intention and has promulgated rules which govern each institution on a state-wide, rather than individual, basis.
(3) The system-wide unit, in all aspects, has proved to be a more efficient and economical method of administering the state college system.
(4) Competition between college units, both in the physical plants and in employer-employee benefits is reduced upon utilization of the state-wide system, because it reduces the possibility of varying benefits.
(5) Past utilization of the state-wide approach indicates that it has not stifled individualized interests at each of the colleges; that distances and locations have not prevented effective coordination between the faculty and the SCB; that a substantial majority of the state college system faculty favors a state-wide unit; and that a state-wide unit has been established for the 18 junior colleges incorporating a master contract with flexible provisions for each campus.
After a consideration of these factors and other evidence of record which reflects that the substantial evidence supports the state-wide system, as found by the district court, we therefore affirm its decision to reverse the findings of the PERB.
In conclusion, we recognize that the determination of the appropriate bargaining unit is a necessary preliminary to the facilitation of collective bargaining, the procedure permissible under the PELRA. However, this preliminary determination has remained unresolved for a period of nearly three years, the initial petition having been filed with the director of the BMS on May 24, 1972. This lengthy delay is less than consistent with the stated aim of utilizing these procedures to expedite employees' collective bargaining rights.
We therefore affirm the order and judgment of the district court which reversed the findings of the PERB in all respects.
Affirmed.
SHERAN, C. J., and KELLY and MacLAUGHLIN, JJ., took no part in the consideration or decision of this case.
NOTES
[1] Upon this appeal, IFO contends that this was an ex parte order arbitrarily issued without the benefit of hearings or motions and after expiration of the time for appeal, established as 10 days by regulations of the PERB, from the order of January 22, 1973.
[2] Minn.St. 15.0424, subd. 1, reads: "Any person aggrieved by a final decision in a contested case of any agency as defined in Minnesota Statutes, Section 15.0411, Subdivision 2 (including those agencies excluded from the definition of "agency" in section 15.0411, subdivision 2, but excepting the tax court, the workmen's compensation commission sitting on workmen's compensation cases, the department of employment services, the director of mediation services, and the department of public service), whether such decision is affirmative or negative in form, is entitled to judicial review thereof, but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo provided by law now or hereafter enacted. The term final decision as herein used shall not embrace a proposed or tentative decision until it has become the decision of the agency either by express approval or by the failure of an aggrieved person to file exceptions thereto within a prescribed time under the agency's rules.
[3] Minn.St. 179.72, subd. 3(b) specifically provides that unit determinations of the director of mediation services are appealable to PERB.
[4] L.1974, c. 246, amended Minn.St. 179.72, subd. 4, to limit the scope of PERB's review powers to the record before the director of mediation and allowing the PERB discretion with regard to de novo appeals.
[5] "Agency" is defined in Minn.St. 15.0411, subd. 2, to include a "state * * * board * * * having a statewide jurisdiction and authorized by law to make rules or to adjudicate contested cases." Specifically excluded, among others, is "(e) the Director of Mediation Services."
[6] This court, in the case of In re Getsug, 290 Minn. 110, 114, 186 N.W.2d 686, 689 (1971), has judicially defined a person aggrieved as:

"* * * one who is injuriously or adversely affected by the judgment or decree when it operates on his rights of property or bears directly upon his personal interest."
[7] Dissenting opinions of two PERB members concluded that the majority PERB decision, which declared that the college presidents were the "appointing authorities," could only foster instability and uncertainty, for it allowed the possibility that the delegated authority would be reclaimed by the SCB, policy matters would not be conclusive, and confusion would result.
[8] Op.Atty.Gen. 316, Oct. 26, 1955, Op.Atty. Gen. 172, Mar. 1, 1944.
[9] See SCB Rule 104, which allows that SCB Rules are controlling of all acts of the board, presidents, etc.; Rule 302 enables the board to resume or redelegate any duty or power initially delegated by it; Rule 504 allows appeal to the board from any decision of a president which would affect faculty or student rights; and Rule 712 extends further right of appeal to the board by a faculty member under certain instances.
[10] As discussed above, the SCB may be properly designated to fall within the purview of this statute, for the definition of agency includes a state "board" with state-wide jurisdiction. Minn.St. 15.0411, subd. 2.