**Harvey PATZWALD, petitioner, Respondent,**

v.

**PUBLIC EMPLOYMENT RELATIONS BOARD, Appellant,**

**and**

**Independent School District No. 197, Appellant.**

**No. 51197.**

Supreme Court of Minnesota.

June 5, 1981.

Warren Spannaus, Atty. Gen., and Brad P. Engdahl, Sp. Asst. Atty. Gen., St. Paul, for Public Employment Relations Board.

Doherty Rumble & Butler, Boyd H. Ratchye and James R. Crassweller, St. Paul, for Ind. Sch. Dist. No. 197.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Mark S. Olson and Donald W. Selzer, Jr., St. Paul, for respondent.

Peterson, Popovich, Knutson & Flynn, Peter S. Popovich and Thomas S. Deans, St. Paul, amicus curiae for Minnesota School Boards Association.

OPINION

TODD, Justice.

Harvey Patzwald was employed as a substitute bus driver by Independent School District No. 197 (ISD). The Association of School Bus Drivers of Independent School District No. 197 (Association) served as the

certified exclusive bargaining representative for the bus drivers employed by ISD. In 1978, ISD and the Association filed a joint petition with the Bureau of Mediation Services (BMS) to have the bargaining unit clarified and redefined to specifically exclude substitute bus drivers. BMS granted the requested clarification and the Public Employment Relations Board (PERB) affirmed the BMS decision. The Ramsey County District Court reversed the order of PERB. We reverse the trial court's decision.

ISD employs 56 bus drivers. Forty-eight drivers, classified as regular bus drivers, contractually commit themselves to a daily routine, driving a particular route at a particular time of the day. The record indicates that the ordinary school year involves 175 days of bus operation. For the fiscal year 1977–78, 35 separate a.m.-p.m. regular route packages existed, and a regular driver with an a.m.-p.m. route package worked an average of 3.7 hours per day or 18.5 hours per week.

The remaining eight drivers employed by ISD perform services on a phone-call basis, fill in for regular drivers on daily routes, and are referred to as "substitute" bus drivers throughout the proceedings. Substitute drivers have no daily committed route and may accept or refuse any driving opportunity made available to them. Driving opportunities for substitute drivers include: (1) filling in for regular drivers on regular routes, and (2) driving for extracurricular and field trips. The supervisor utilizes an equalization process to assign substitute drivers, striving to allow regular and substitute bus drivers an equal opportunity to drive.

The identifiable difference between the nature of employment as a regular driver and a substitute driver is contractual. A regular driver contractually commits to drive a regular route while a substitute driver possesses no legal obligations to drive.

Until 1971, ISD employed Patzwald as a regular driver. Since December 1971, Patzwald has performed services for ISD as a substitute driver. Patzwald, while classified as a substitute driver, wrote the Association on December 28, 1976, requesting that it represent his claims under the master agreement of August 10, 1976. On February 15, 1977, Patzwald filed a grievance claim. ISD contended that it need not arbitrate Patzwald's claim because Patzwald, as a substitute driver, was not a member of the bargaining unit. Nevertheless, ISD agreed to submit the matter to arbitration. Patzwald filed an affidavit in the arbitration proceedings opposing dismissal of the arbitration. The arbitrator declined to proceed until the scope of the bargaining unit was clarified.

Subsequently, ISD and the Association filed the joint petition for clarification on September 15, 1977. After hearings pursuant to a petition for clarification and/or amendment of the bargaining unit, in a decision dated April 18, 1978, BMS' director clarified and defined the appropriate bargaining unit to include: [1]

> All regular school bus drivers employed by Independent School District No. 197, West St. Paul, Minnesota, whose employment service exceeds the lesser of 14 hours per week or 35 per cent of the normal work week and 100 work days per year, *excluding substitute bus drivers* and supervisory, confidential, and all other employees. [Emphasis added.]

Patzwald appealed from the BMS decision. After oral argument before PERB, in a 2–1 decision dated April 10, 1979, PERB affirmed the BMS decision that substitute drivers "do not come within the scope of the bargaining unit."

Patzwald appealed from PERB's decision to Ramsey County District Court. The district court remanded the matter to PERB for proceedings consistent with the district

---

1. Prior to clarification, the unit was defined to include: "All school bus drivers employed by Independent School District No. 197, West St. Paul, Minnesota, who work more than 14 hours per week and 100 days per year, excluding supervisory, confidential, and all other employees."

court's holding that "Substitute bus drivers are 'public employees' within the meaning of Minn.Stat. § 179.63, subd. 7 (1980), if they work the requisite number of hours or days in any calendar year."

The issue before us is whether the Director of the Bureau of Mediation Services erred in his determination that substitute bus drivers are not members of the appropriate bargaining unit.

Minnesota adopted the Public Employees Labor Relations Act of 1971 (PELRA) to promote orderly and constructive relationships between public employers and employees. As part of the statutory scheme, public employers were required to bargain and negotiate with the exclusive representatives of the appropriate bargaining unit. PELRA provides that the Director of BMS is authorized to determine the appropriate bargaining unit pursuant to Minn.Stat. § 179.71, subd. 3 (1980), which provides in pertinent part that:

> The director shall determine appropriate units, except where appropriate units are defined by section 179.741. In determining the appropriate unit he shall take into consideration, along with other relevant factors, the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, involvement of professions and skilled crafts and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, and the recommendation of the parties, *and shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives.* [Emphasis added.]

In 1972, the director had certified the appropriate bargaining unit for bus drivers employed by ISD to be "all school bus drivers * * * who work more than 14 hours per week and 100 days per year." On April 18, 1978, the director amended the original certification to clarify the fact that the appropriate bargaining unit specifically excludes substitute bus drivers.

This case arose in the procedural posture of a petition for clarification or amendment of a bargaining unit. Accordingly, on review, we are limited to the issue of whether the appropriate bargaining unit excludes substitute bus drivers, and the scope of review is whether BMS' decision is supported by substantial evidence on the record as a whole. *See* Minn.Stat. § 15.0425(e) (1980). We have previously stated that:

> [S]ubstantial evidence is * * * "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." * * * If the evidence is conflicting or the undisputed facts permit more than one inference to be drawn, the findings of the [director] may not be upset and the district court may not substitute its judgment for that of the [director].

*Minneapolis Van & Warehouse Co. v. St. P. Terminal Warehouse Co.,* 288 Minn. 294, 299, 180 N.W.2d 175, 178 (1970); *see Minnesota State College Bd. v. Public Employment Relations Bd.,* 303 Minn. 453, 469, 228 N.W.2d 551, 560–61 (1975).

In light of the above scope of review, we affirm the director's determination that considering the substance of the substitute bus drivers' employment and the statutory criteria of Minn.Stat. § 179.71, subd. 3 (1980), members of the bargaining unit did not include Patzwald or other substitute drivers. The record before the Director of BMS indicates that the parties to the original unit certification never intended the unit to include substitute bus drivers. The transcript indicates the intention of the parties and an illustrative example of the relevant, undisputed testimony is as follows:

Q. Well, did you participate in the original certification of the bargaining unit?

A. [Donald G. Zahn, Business Manager for District 197] Yes, I did.

Q. Okay, and that was in '72?

A. Right.

Q. With the then head of the association?

A. Right.

Q. Okay. What was the understanding as to who was in the bargaining

unit? Was it the regular drivers or the regular drivers and the substitutes in 1972 when the district—when the association's bargaining unit was first certified?

A. It was certainly our understanding that it was just the regular drivers.

Q. It was—to your knowledge, was that the understanding of the association?

A. To my knowledge.

Additionally, the record discloses that the contractual commitment from regular bus drivers is significantly different from the casual employment relationship of substitute drivers,[2] such that the first bargaining negotiations covered regular bus drivers only. Moreover, in successive contract negotiations, ISD and the Association never treated the employment of substitute drivers as a subject of negotiation and both ISD and the Association still desire that the substitute drivers be excluded from the unit.

Applying the appropriate standard of review and noting that the legislature specifically instructed the director to "place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives", *see* Minn.Stat. § 179.71, subd. 3 (1980), we hold that based on the record of the proceedings before the BMS as a whole, there is substantial evidence to support the director's decision that the appropriate bargaining unit excludes substitute bus drivers. The Director of BMS did not err in his determination and we, therefore, affirm his order.

We note that the Director of BMS stated in his findings that in view of the part-time and/or temporary nature of their employment, substitute drivers are not public employees within the meaning of PELRA. This finding is not necessary to BMS' conclusion that substitute drivers are not members of the bargaining unit and unfortunately such a finding resulted in the critical issue being improperly redefined as wheth-

er substitute drivers are public employees within the meaning of PELRA when Patzwald appealed from BMS' decision to PERB pursuant to Minn.Stat. § 179.72, subd. 3(b) (1980). In a 2–1 decision, the PERB majority affirmed BMS' decision and concluded that substitute drivers are not "public employees" because of the character of their employment. The majority did note that it was uncontroverted that both ISD and Association intended substitute drivers to be outside the scope of the bargaining unit and the negotiated contracts.

The trial court also erroneously treated the issue on appeal as whether substitute drivers are "public employees", reversed the BMS and PERB decisions, and held that substitute drivers are "public employees" within the meaning of PELRA if they "ordinarily" work the statutorily required number of hours or days in any calendar year.

Although their decisions should have been confined to whether Patzwald as a substitute driver was a member of the bargaining unit, both PERB and the trial court interpreted and applied the legislature's statutory definition of a "public employee" as contained in Minn.Stat. § 179.63, subd. 7 (1980), to Patzwald. This statute provides in pertinent part that:

"Public employee" or "employee" *means any person* appointed or employed by a public employer except:

\* \* \* \* \* \*

(e) *part time employees whose service does not exceed the lesser of 14 hours per week or 35 percent of the normal work week in the employee bargaining unit;*

(f) *employees who hold positions of a basically temporary or seasonal character for a period not in excess of 100 working days in any calendar year*; [Emphasis added.]

We can find no support for the trial court's expansion of the legislative lan-

---

2. Although we are aware that similarities exist and that regular and substitute drivers receive the same rate of pay, perform the same maintenance functions, and are supervised by the same person, the pivotal issue is the nature of the employment relationship and not the resulting terms of employment.

guage to what an employee "ordinarily" does in a given work situation and note that both statutory and case law contemplate examining the employee's status in light of his contractual employment each year. In *Independent School District No. 621 v. Public Employment Relations Board*, 268 N.W.2d 410 (Minn.1978) (Mounds View), where we had occasion to consider Minn. Stat. § 179.63, subd. (7)(f) (1980), as it related to teachers, we examined the substance of the employment contract and held that a teacher's position is separate from the individual occupying it at any given time. The substitute teachers were not included in the bargaining unit because to do so "would violate the intent of the legislature to exclude short-term, temporary and seasonal employees from PELRA." 268 N.W.2d at 414.

We note that any approach other than a contractual approach for determining whether an employee is a member of a bargaining unit would create an unmanageable situation as is evidenced by the facts of this case. At the time Patzwald filed his grievance in February 1977, he had worked 17 days during the calendar year 1977 and thus did not qualify as a "public employee" under subd. 7(f). The record further discloses that in 1977, Patzwald worked substantially fewer hours than in prior years and there is no evidence to support the trial court's finding that he worked 35 percent of the normal work week. Additionally, this finding cannot be substantiated by the addition of the word "ordinarily" because there exists no judicial authority for such a substantial modification of the statute.

Insofar as the ultimate issue before us is whether substitute drivers are members of the bargaining unit, we do not reach the issue of whether substitute drivers are "public employees." Here, the Director of BMS, charged with the responsibility of determining the makeup of the appropriate bargaining unit, found that substitute drivers are not members of the unit. This finding, which was the critical determination, is supported by substantial evidence on the record as a whole and is not affected by whether or not Patzwald is a public employ-

ee. Even if we were to hold that Patzwald is a public employee, this would not affect our affirmance of BMS' finding that he was not part of the bargaining unit.

We reverse the trial court decision and reinstate the decision of the Director of BMS as affirmed by PERB.

YETKA, Justice (dissenting).

One of the stated purposes of PELRA is to recognize the public employees' right to engage in representative bargaining with their employers. The statute also recognizes the attendant right of such employees to have their grievances aired through their bargaining representative. The majority decision in this case effectively denies Patzwald and other substitute drivers these and other rights specifically granted them by PELRA.

The majority opinion indicates that because substitute drivers were not intended to be included in the collective bargaining unit, they cannot benefit from the grievance procedure established by the exclusive representative of that unit and the school district. This renders substitute drivers such as Patzwald without a practical method of resolving their legitimate grievances. To suggest that the substitute drivers form a separate bargaining unit ignores the practical difficulties involved in establishing another unit and the gross inefficiency that would result from the duplication of bargaining efforts.

The majority concedes in a footnote that all drivers receive the same rate of pay, perform the same maintenance functions, are supervised by the same person and operate the same equipment. The opinion then indicates that the proper focus of a bargaining unit determination is the "nature of the employment relationship and not the resulting terms of employment." Disregarding this exercise in semantic gymnastics, it is clear that substitute drivers have the same job responsibilities and job-related problems as the regular drivers and are in basically the same employment position. The interests that both regular and

substitute drivers seek to promote through collective bargaining are identical. A conclusion that substitute bus drivers are not within the appropriate bargaining unit is simply not justified by the facts.

Finally, PERB stated that the sole issue before it was whether Patzwald was a public employee within the meaning of Minn. Stat. § 179.63(7) (1980). The review of the PERB decision in district court was also necessarily limited to an examination of the merits of the statutory status of Patzwald. The majority decision, however, views the public employee issue as irrelevant and instead has chosen to pass on the contractual status of Patzwald as a member of the bargaining unit. Because PERB and the district court were concerned only with the statutory question, they did not address the issue of whether Patzwald was a member of the unit by contract. If the majority is correct in its decision that Patzwald's status as a public employee is irrelevant, the appropriate disposition of this case would be to remand to PERB for a review of the BMS decision that substitute drivers were not members of the unit as a matter of contract. By deciding the contract question before the lower court and the agency have addressed that issue, the majority is short-circuiting the appellate process that is designed to assure full development of the record and the issues. The premature decision of a question not addressed by the agency also deprives this court of the benefit of the application of the agencies' expertise to the problem.

I would remand the case to PERB for a decision on the contract issue.