STATE EX REL. EDWARD MAROLT v.
INDEPENDENT SCHOOL DISTRICT NO. 695
AND ANOTHER.

217 N. W. 2d 212.

April 12, 1974—Nos. 44151, 44152.

---

*Peterson, Popovich, Knutson & Flynn, Peter S. Popovich, James E. Knutson,* and *Ivars J. Krafts,* for appellants.

*Helgesen, Peterson, Engberg & Spector, Robert J. Tennessen,* and *Roger A. Peterson,* for respondent.

Heard before Knutson, C. J., and Otis, MacLaughlin, and Mulally, JJ., and considered and decided by the court.

MACLAUGHLIN, JUSTICE.

This is an appeal by respondents, Independent School District No. 695 and its board, from an order of the trial court denying a motion for a new trial. The trial court reversed an order of respondent school board terminating the teaching contract of petitioner, Edward Marolt. We affirm.

On December 22, 1969, James A. Johnson was hired by respondent school board as a junior high school English teacher. Prior to the commencement of classes for the 1970-71 school year, Johnson entered military service, and petitioner was interviewed as a potential replacement. Petitioner testified that respondents' superintendent indicated that Johnson might return after completion of his military service and that the position would have to be available for him at that time.

Thereafter, petitioner was hired by respondent school board as an English teacher. The parties entered a written contract

on August 28, 1970, which stated that it was entered "pursuant to M. S. 125.12," the so-called continuing contract statute applicable to teachers. The contract further stated that it was "effective for the 1970-1971 school year only." On March 30, 1971, respondent school board passed a resolution stating that "the teaching contract of Edward Marolt, a probationary teacher in Independent School District No. 695 is hereby terminated at the close of the current school year and is not renewed for the 1971-1972 school year." A letter was sent to petitioner on March 31, 1971, informing him that "[d]ue to the drop in enrollment in the Junior High School, we are forced to abolish one position in English." The letter stated that the action of the board was taken "pursuant to Chapter 890, Section 1, Subdivision 3, Laws of 1967 [Minn. St. 125.12, subd. 3]."

In April 1971, the superintendent of schools and petitioner discussed the possibility of petitioner's being retained as a teacher for the 1971-72 school year, and petitioner was again offered a contract on the basis that he was replacing Johnson. Petitioner understood this, but refused to sign the 1971-72 contract with the term "employment for only one year" included. Because of his objection, the contract, as signed, did not contain such a clause, although respondent school board's minutes reveal that the contract was approved by the board for the 1971-72 school year only. Again, the written contract stated that it was entered by the parties "pursuant to M. S. 125.12."

Sometime in early 1972, Johnson informed the superintendent that he was to be released from service and desired to teach during the 1972-73 school year. A contract for that year was submitted to Johnson and accepted by him. On February 28, 1972, respondent school board passed a resolution that "the continuing contract of Edward Marolt * * * be terminated effective at the end of the 1971-72 school year pursuant to M. S. 125.12." The school board's resolution also stated that the proposed termination was based upon the "[d]iscontinuance of position due to return of incumbent James Johnson from military service." Dis-

continuance of position is a stated reason for termination of a continuing contract found in Minn. St. 125.12, subd. 6. The written notice submitted to petitioner contained the statutory reason for termination, stated that the notice was given pursuant to § 125.12, and informed the petitioner, as required by § 125.12, that he was entitled to a hearing before the school board provided he requested it within 14 days after receipt of the notice. Petitioner requested such a hearing and requested district court review of the school board's decision following the hearing. The district court reversed the school board which in turn led to this appeal.

One of the issues argued by the parties on appeal is whether petitioner was hired pursuant to § 125.12, the continuing contract statute,[1] or whether he was hired as an "acting incumbent"

---

[1] Minn. St. 125.12 governs the termination of a teacher's employment and the requirements for obtaining tenure. It provides in relevant part as follows: "Subdivision 1. A superintendent, principal, supervisor, and classroom teacher and any other professional employee required to hold a certificate from the state department shall be deemed to be a 'teacher' within the meaning of this section.

\* \* \* \* \*

"Subd. 3. The first and second consecutive years of a teacher's first teaching experience in Minnesota in a single school district shall be deemed to be a probationary period of employment, and after completion thereof, the probationary period in each school district in which he is thereafter employed shall be one year. \* \* \*

"Subd. 4. A teacher who has completed his probationary period in any school district, and who has not been discharged or advised of a refusal to renew his contract pursuant to subdivision 3, shall have a continuing contract with such district. Thereafter, the teacher's contract shall remain in full force and effect, except as modified by mutual consent of the board and the teacher, until terminated by a majority roll call vote of the full membership of the board, upon one of the grounds specified in subdivision 6, or until the teacher is discharged pursuant to subdivision 8, or by the written resignation of the teacher, before April 1 \* \* \*. \* \* \* Before a teacher's contract is terminated by the board, the board shall notify the teacher in writing and state its ground for the proposed termination in reasonable detail together with

under § 192.263, which provides for the hiring of replacements for public officers or employees who are on leaves of absence for military service, pursuant to § 192.261.[2] However, after care-

---

a statement that the teacher may make a written request for a hearing before the board within 14 days after receipt of such notification. * * *

\* \* \* \* \*

"Subd. 6. A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:

(a) Inefficiency;

(b) Neglect of duty, or persistent violation of school laws, rules, regulations, or directives;

(c) Conduct unbecoming a teacher which materially impairs his educational effectiveness;

(d) Other good and sufficient grounds rendering the teacher unfit to perform his duties; or

(e) Discontinuance of position * * *."

[2] Minn. St. 192.261 deals with the right of public employees to receive leaves of absence for military service and provides in part: "Subdivision 1. Subject to the conditions hereinafter prescribed, any officer or employee of the state or of any political subdivision, municipal corporation, or other public agency of the state who engages in active service in time of war or other emergency declared by proper authority in any of the military or naval forces of the state or of the United States for which leave is not otherwise allowed by law shall be entitled to leave of absence from his public office or employment without pay during such service, with right of reinstatement as hereinafter provided. * * *

"Subd. 2. Except as otherwise hereinafter provided, upon the completion of such service such officer or employee shall be reinstated in the public position, which he held at the time of entry into such service * * *.

\* \* \* \* \*

"Subd. 5. (a) Any such public officer or employee who is a member of the military forces who is ordered to an initial period of active duty for training of not less than three consecutive months shall, upon application for reemployment * * * be entitled to all reemployment rights and benefits provided by Minnesota Statutes 1961, Section 192.261, and acts amendatory thereof * * *."

Minn. St. 192.263 provides for hiring replacements to fill vacancies created by granting leaves to employees under § 192.261. It provides:

fully reviewing the record, we adopt the position of the trial court that, based upon all the facts in this case, respondents treated petitioner on the basis that he had a continuing contract under § 125.12 and that, as expressed by the trial court, "[t]here is no difficulty in holding that Petitioner's 'position' was that of a tenured teacher of English in Respondent's school system" at the time of Johnson's return from military service.[3]

Further, while there is some disagreement between the parties, we hold that under § 192.261 Johnson, upon his return, was entitled to be reinstated in his former position as an English teacher. A more fundamental question is the effect of Johnson's return upon petitioner's position.[4] Respondents argue that they acted properly in terminating petitioner at the time Johnson returned. Petitioner argues that if there were nontenure teachers

"In any case where a public officer or employee is absent with leave under the provisions of sections 192.26 to 192.264 and where it is necessary in the public interest to provide for the performance of the duties of his position during such absence, the authority having power to fill a vacancy in the position may appoint a substitute, to be known as acting incumbent * * *."

[3] Petitioner became a tenure teacher in respondent school district after the 1970-71 contract year because he previously had teaching experience in another Minnesota school district and therefore came within the provisions of Minn. St. 125.12, subd. 3, which provides that a teacher who has taught for 2 consecutive years in Minnesota in a single school district shall have only a 1-year probationary period in each school district in which he is thereafter employed. See, footnote 1, *supra*.

[4] In State ex rel. Ging v. Board of Education, 213 Minn. 550, 585, 7 N. W. 2d 544, 563 (1942), we defined "position" as "rank, grade, or station in the school system as determined by the several factors or criteria indicated in the tenure act itself." In Ging, we said that in order to discharge a primary grade teacher on the grounds of discontinuance of position, "it was necessary to establish that the *position* which [the teacher] held in the primary grades had been discontinued or that the number of such positions in the entire system had been necessarily reduced so as to require a reduction in the number of primary teachers having tenure rights." 213 Minn. 588, 7 N. W. 2d 564. Therefore, in the instant case, because petitioner held the position of a tenure teacher

serving in positions similar to petitioner's at the time of Johnson's return petitioner should not have been terminated because of his preferred status as a tenure teacher.

Therefore, the issue which we must decide is whether the contract of a teacher who has attained tenure may be terminated because of a necessary discontinuance of position where there is retained by the school district a teacher in the same position who has not attained tenure. This question has not been decided by this court, but there is ample authority in other jurisdictions supporting the trial court's conclusion that, under these circumstances, the tenure teacher must be preferred.

A leading case on this issue is Watson v. Burnett, 216 Ind. 216, 23 N. E. 2d 420 (1939). The Watson case involved the interpretation of a continuing service statute similar to our own. In discussing the question with which we are confronted herein, the Watson court said (216 Ind. 221, 23 N. E. 2d 423):

"'* * * This case, however, presents the question of whether a justifiable decrease in teachers authorizes the retention by the trustee of a teacher who has not acquired a permanent tenure status and the cancellation of the contract of a teacher who has acquired such status and who is qualified to teach in the position for which the non-tenure teacher is retained? It is our opinion that this question must be answered in the negative. To hold otherwise would be contrary to the entire spirit and purpose of the Act. The principal purpose of the Act was to secure permanency in the teaching force. If a justifiable decrease in the number of teaching positions should be held to give to the trustee the power to choose between tenure and non-tenure teachers, both of whom are licensed to teach in the teaching position which remains, he is thereby given the power to nullify the Teachers' Tenure Act, and to discharge without cause a teacher who has,

---

of English, it was necessary for respondents to show a discontinuance of that position or a reduction in the total number of such positions before petitioner could be dismissed on the grounds of discontinuance of position.

by reason of having served satisfactorily as a teacher during the specified period, secured a tenure status and an indefinite permanent contract. To countenance such an interpretation of the law would be to permit the trustee to do indirectly that which the law expressly forbids him to do directly."

In Seidel v. Board of Education of Ventnor City (N. J. Supreme Court), 110 N. J. L. 31, 33, 164 A. 901, 902, affirmed (N. J. Court of Errors and Appeals), 111 N. J. L. 240, 168 A. 297 (1933), we find the following:

"* * * Granting that apart from the statute, a school board may in the interests of economy reduce the number of teachers, the protection afforded by the statute would be little more than a gesture if such board were held entitled to make that reduction by selecting for discharge teachers exempt by law therefrom, and retaining the non-exempt. If such reduction is to be made at all, and the place remains which the exempt teacher is qualified to fill, such teacher is entitled to that place as against the retention of a teacher not protected by the statute."

47 Am. Jur., Schools, § 139, states:

"* * * Even though by statute a justifiable decrease in the number of teaching positions is recognized as ground for the cancelation of a permanent tenure contract, the retention of a probationary teacher and the dismissal of a permanent employee qualified to teach in the position of the non-tenure teacher is not authorized by such a statutory provision."

See, also, Barnes v. Mendenhall, 98 Ind. App. 229, 183 N. E. 556 (1932); Hankenson v. Board of Education of Waukegan Twp. 15 Ill. App. 2d 440, 146 N. E. 2d 194 (1957); Hensley v. State Bd. of Education, 71 N. M. 182, 376 P. 2d 968 (1962); Pickens County Bd. of Education v. Keasler, 263 Ala. 231, 82 So. 2d 197 (1955); Gassen v. St. Charles Parish School Bd. 199 La. 954, 7 So. 2d 217 (1942); Board of School Trustees v. O'Brien, 56 Del. 79, 190 A. 2d 23 (1963).

We agree with the reasoning of these cases. Minn. St. 125.12

is intended primarily to protect a teacher who has entered upon continued contractual service. It is the intent of the statute to grant a teacher whose ability and efficiency have been proved by satisfactory service for a specified period of time a position more secure than that of a teacher who has not yet fully demonstrated similar capabilities for the required probationary period. Therefore, we hold that respondent school board, upon concluding that there was a justifiable need for the discontinuance of an English teacher position, could not terminate a tenure teacher and retain a nontenure teacher to fill a position for which the tenure teacher was qualified.

The record discloses that there were two nontenure teachers retained by respondents to teach English during the 1971-72 school year. The record further reveals that each of them, assuming they continued teaching in the school district and were not otherwise terminated, have now achieved tenure. Assuming that these teachers have achieved tenure, this opinion is not to be construed as a directive that their positions be terminated to create a position for petitioner. The choice of which of the tenure teachers occupying these positions should be terminated, if there is still a valid need for a decrease in the number of such positions, is an administrative decision for respondent school board acting under the appropriate provisions of § 125.12. See, State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. 2d 544 (1942).

The order of the trial court reversing respondent school board's termination of the continuing contract of petitioner Edward Marolt is affirmed.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.