## VERNON JORDAHL v. INDEPENDENT SCHOOL DISTRICT NO. 129.

225 N. W. 2d 224.

December 13, 1974—No. 44573.

---

*Oppenheimer, Wolff, Foster, Shepard & Donnelly, Robert R. Weinstine,* and *Paul R. Hannah,* for appellant.

*Peterson, Popovich, Knutson & Flynn* and *James E. Knutson,* for respondent.

Heard before Sheran, C. J., and Peterson, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

This is an appeal by petitioner, Vernon Jordahl, a teacher in respondent Independent School District No. 129, from an order of the trial court affirming the action of that respondent's school board in terminating his teaching contract. We affirm.

At the time of the proceedings below, petitioner had served for 11 years as a teacher in Independent School District No. 129 in Montevideo. During the 1972-1973 school year he taught a combination of English and social studies in classes in the senior high school.

On January 31, 1973, the school board, apparently faced with

declining enrollments, passed a resolution directing the superintendent of schools to consider the discontinuance of programs for the purpose of reducing expenditures and better utilizing funds and teaching personnel. The resolution also contained criteria for terminating teacher contracts pursuant to Minn. St. 1971, § 125.12, subd. 6(e),[1] relating to discontinuance of position.[2] The superintendent of schools made recommendations which included the discontinuance of a combination English and social studies position and an attendance official position, which recommendations were adopted by resolution of the school board.

At a board meeting on February 12, 1973, a resolution proposing termination of petitioner's contract was adopted and notice of the proposed termination was sent to petitioner. Petitioner requested a hearing, which was held before the board on March 13, 1973.

At the hearing, the superintendent was asked how he arrived at the discontinuance of a combination English and social studies position in making his recommendations to the school board. He testified in part as follows:

"A. * * * [T]he decision was made that the position of attendance officer would no longer exist but that the senior high school principal would assume this responsibility. * * *

* * * * *

[1] Minn. St. 1971, § 125.12, subd. 6, provides in part: "A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:

* * * * *

"(e) Discontinuance of position, lack of pupils, or merger of classes * * *."

[2] The resolution states: "That the school board hereby establishes the following criteria as a matter of policy to be utilized in determining which teachers' contract will be terminated in effecting discontinuance of positions; qualifications, salaries, program elimination, comparative salaries, financial status, certification, longevity, competency, recommendations of its administrative staff, priority of programs, education background—degrees, incumbent to discontinued position, and other similar relevant considerations."

"A. As far as the combination of English and social, the present attendance in social studies then would have to have full time employment as a social studies teacher; consequently, the social studies position would then be eliminated and as far as the English position, the person who was teaching these English courses a year ago will be in a position to assume this teaching assignment for the 1973-74 school term.

\* \* \* \* \*

"Q. Now as reasons indicated in the resolution proposing to terminate—Or the discontinuance of position, you indicated to reduce expenditures, for the better utilization of school district funds, and for better utilization of school district personnel through combination of positions. Could you explain what is meant by that?

"A. The—As I've already testified that the person who is now the attendance officer, that portion of his job assignment would be given to the senior high school principal Mr. Francis Heinen. The social studies position which is now part-time which is being taught by Mr. Jordahl would be assigned to Mr. Holten. The English which is now being taught by Mr. Jordahl would be reassigned to Mrs. Paula Hanson.

"Q. Will this reduce expenditures in the school district?

"A. Yes, it will.

"Q. It will result in the better utilization of school district funds?

"A. Yes.

\* \* \* \* \*

"Q. \* \* \* Mr. Norland, are there funds available to pay for —To pay for an attendance official and to pay for an additional position of part-time English and part-time social studies?

"A. We have built it into the budget for this year, yes, but for next, which is 1973-'74, in order to better utilize the staff as we have stated, as the Board has stated in the resolution and to better utilize the funds that are available, that this is what the administration recommended to the Board of Education."

Petitioner had the least seniority of the senior high school social studies teachers, all of whom were rated of equal competence, and less seniority than other English teachers with the exception of teacher Paul Blahosky. Testimony was elicited at the hearing with regard to the relative competence of petitioner and Blahosky, and while there was no allegation or evidence of incompetency, it was the opinion of Francis Heinen, senior high school principal, that petitioner was the less competent of the two.

On March 23, ten days after the hearing, the board adopted a resolution terminating the contract of petitioner at the end of the 1972-1973 school year.

The issues presented on appeal are:

1. Whether the trial court's order is appealable;

2. whether the school board complied with the procedural requirements of the Teacher Tenure Act;

3. whether the school board's termination of petitioner's contract on the grounds of "discontinuance of position" was arbitrary and based on an erroneous theory of law.

1. The respondent raises the preliminary issue of the appealability of the trial court's order. The notice of appeal states that it is taken from "Order on Review by Certiorari of the said District Court * * * affirming proceedings before Independent School District No. 129 * * *." This, argues respondent, indicates that appeal is taken from the order for judgment, rather than from the judgment itself.

Since the certiorari proceeding in the trial court below was a "special proceeding,"[3] the appealability of the order therein is to be determined by Rule 103.03(h), Rules of Civil Appellate Procedure. See, State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. 2d 544 (1942).[4] Rule 103.03(h) provides for

---

[3] Morey v. School Board of Ind. School Dist. No. 492, 268 Minn. 110, 128 N. W. 2d 302 (1964).

[4] The pertinent language of Minn. St. 1941, § 605.09, applied by the court in State ex rel. Ging v. Board of Education, 213 Minn. 550, 7

appeal "from the final order or judgment affecting a substantial right made in a special proceeding." Since the order of the trial court affirmed the order of the school board terminating petitioner's contract, it effectively and finally disposed of the proceedings below and is appealable under Rule 103.03(h).

2. Petitioner raises as an issue the question of compliance with the procedural requirements of Minn. St. 1971, § 125.12. Subd. 4 of that statute provides in part:

"* * * Before a teacher's contract is terminated by the board, the board shall notify the teacher in writing and state its ground for the proposed termination in reasonable detail * * *."

In this case the board's notice to the petitioner contained the following:

"* * * [A] resolution was adopted by a majority vote of the board, proposing to terminate your teaching contract effective at the end of the 1972-1973 school year pursuant to Minnesota Statutes 125.12 upon the grounds in said statute and which are specifically as follows:

"1. To reduce expenditures, for the better utilization of school district funds and for the better utilization of school district personnel through combination of positions."

Petitioner contends that this language did not give him notice of the statutory grounds of "discontinuance of position."

In Fisher v. Independent School Dist. No. 118, 298 Minn. 238, 240, 215 N. W. 2d 65, 67 (1974), the teacher was given the following notice:

"In order that a Group Supplemental Special Education program may be put into effect for the 1972-73 school term, with two (2) part-time special education teachers—not to exceed three (3) hours per day per teacher—it is the intent of the Board of Education to terminate your full-time contract as a special

N. W. 2d 544 (1942), is virtually identical to Rule 103.03(h), Rules of Civil Appellate Procedure.

education teacher at the end of the 1971-72 school term and issue to you for the 1972-73 school term a contract for part-time work as a special education teacher not to exceed three (3) hours per day.

"It is the belief of the Board of Education and the Director of Special Education that a Group Supplemental Special Education Program will better meet the needs of the students."

The teacher challenged this notice on the same grounds as does petitioner in the instant case, but this court rejected her argument, stating that although the notice does not specifically use the words "discontinuance of position," a fair reading of it clearly conveys to the teacher that her position was being discontinued. The notice in the instant case seems no less clear in conveying the school board's actual intention.

Petitioner also contends that Minn. St. 1971, § 125.12, subd. 6, was violated. That statute provides, in part:

"All evaluations and files generated within a school district relating to each individual teacher shall be available during regular school business hours to each individual teacher upon his written request. The teacher shall have the right to reproduce any of the contents of the files at the teacher's expense and to submit for inclusion in the file written information in response to any material contained therein; provided, however, a school district may destroy such files as provided by law."

During Principal Heinen's testimony as to petitioner's relative competence, he referred to his own notebook which apparently contained a list of specific occurrences regarding petitioner. A former principal, Mr. Shaw, also testified on the same subject from a similar notebook. Petitioner apparently would exclude any evidence based on these personal records on the basis that they were not available to him in his evaluation file.

It appears from the record that petitioner's personnel file contained all formal evaluation reports. The question is whether the principal's personal notebooks were "evaluations and files gen-

erated within a school district" which also belonged in petitioner's file, and if so, whether their absence from the file prevented petitioner from receiving a fair hearing. This issue was not specifically presented to the lower court in the petition for writ of certiorari and is not properly before this court and we decline to pass on it.

3. Petitioner's other contention on appeal is that the board, in discontinuing a position, defined that "position" as the personal and peculiar station of the petitioner, and that this was arbitrary and an erroneous interpretation of "position" as used in the Teacher Tenure Act. He also points out that his functions in the school have not been terminated and that no services which he performed have in any way been curtailed.

Both petitioner and respondent rely on State ex rel. Ging v. Board of Education, *supra*; in which a teacher's "position" under the tenure act was defined as his relative place, rank or standing in the school system. The school board had proceeded in that case upon the theory that Ging's position was that of a "teacher in said district." This court, under its above definition, found this theory erroneous and described Ging's position as "head of the social science department and teacher of sociology and history" in the high school. The description of the position being discontinued in the instant case as "combination social studies and English teacher" seems consistent with the Ging case.

What petitioner is really arguing is that his "position" was not discontinued because its functions are still being carried out. Looking again to the Ging case, the board's decision there had been that Ging's position as "a teacher of said district" was discontinued. After finding this definition erroneous and defining Ging's position as head of a department and teacher of sociology and history, this court found that "evidence is wholly lacking to show that the *position* of Ging, as we have defined it, was in fact discontinued." 213 Minn. 587, 7 N. W. 2d 563. Thus, Ging is inconclusive on the question of whether a position may be dis-

continued even though the functions performed by the teacher who had the position have not been discontinued.

This question was raised in Weider v. Board of Education, 112 N. J. L. 289, 170 A. 631 (1934). The teacher in that case served both the grades and the high school as a physical training instructor. The board, in terminating her tenured employment on grounds of abolishment of her position, spread the physical training instruction in the grades among several teachers of other subjects, and employed a new teacher partly to teach physical training in high school and partly to teach English. The New Jersey Supreme Court approved the action, the effect of which was to discontinue a teacher's position without curtailing the functions of that position.

The trial court in an excellent memorandum focused on this issue and other matters as follows:

"The action of the school board was not arbitrary or capricious. The board held the matter under advisement for a period of ten days after the hearing before making a final determination. The petitioner's position was not the only position discontinued. There were four others. The action of the board was not one to make room for someone else, as referred to in State ex rel Ging v. Board of Education, 213 Minn. 550, 7 N. W. 2d 544. It was one position of part-time Social Studies and English. That position was discontinued. These part-time assignments were assigned to others in the school system. The result of assigning the part-time Social Studies and English class assignments was that there was one too many teachers. In the Social Studies area petitioner had the least seniority. In the English Department he was less competent than Mr. Blahosky. The board applied the criteria for termination of teaching contracts which it had adopted on January 31, 1973. When a position is discontinued school boards have a difficult decision to make as to which one of the teacher's contracts should be terminated. The guidelines set forth in the January 31, 1973 resolution are reasonable and workable.

"Counsel for petitioner claims that by limiting itself to only

senior high school teachers the board avoided a full consideration of the issue of competency with respect to all English teachers in the secondary schools. There is no evidence that there were any English teachers who had less seniority than petitioner, except Mr. Blahosky."

In the present case it is obvious that there was a valid need for a decrease in the number of positions. The choice of which of the tenured teachers should be retained is an administrative decision for respondent school board. See, State ex rel. Marolt v. Independent Sch. Dist. No. 695, 299 Minn. 134, 217 N. W. 2d 212 (1974). School boards should have broad discretionary powers free from judicial interference in the absence of a finding that their actions were arbitrary and capricious.

Affirmed.