JAREN W. HENDRICKSON v. INDEPENDENT SCHOOL DISTRICT NO. 319.

228 N. W. 2d 126.

April 4, 1975—No. 44807.

*Helgesen, Peterson, Engberg & Spector* and *Thomas W. Wexler,* for appellant.

*Edward J. Matonich,* for respondent.

PER CURIAM.

Petitioner appeals from a judgment of the trial court which affirmed an order of respondent school district terminating his continuing teaching contract and which quashed a writ of certiorari which had issued. Petitioner contends that the termination by the school board and the decision of the trial court were based on an erroneous theory of law. We affirm the trial court.

During the 1972-1973 school year, respondent school district decided that its Social Studies-English Department was overstaffed. Each of eight teachers in the department taught four hours of class per day in addition to supervisory and study-hall activities. A plan was devised that would eliminate one of these teaching positions by scheduling each of seven teachers to teach five hours of class per day. Five hours' teaching per day was felt to be the optimum schedule, was in compliance with the recommended guidelines of the Minnesota Department of Education, and was acceptable under the union-school district working agreement. The plan was designed so that it would not increase the number of students per class hour.

The plan was adopted by the school board, and on March 12, 1973, the board resolved to terminate petitioner's contract. By agreement with the local teachers' union, seniority was to be the sole criteria to be used in staff reduction resulting from discontinuance of position.[1] Petitioner had less seniority than any of the other English and social studies teachers of the district.

---

[1] See, State ex rel. Marolt v. Independent School Dist. No. 695, 299 Minn. 134, 217 N. W. 2d 212 (1974).

The trial court concluded that the termination proceedings were pursuant to law, that the termination was in accordance with Minnesota law, and that the board did not act in an arbitrary, capricious, or oppressive manner.

Minn. St. 1971, § 125.12, subd. 6, provides in part:

"A continuing contract may be terminated, effective at the close of the school year, upon any of the following grounds:

\* \* \* \* \*

(e) Discontinuance of position \* \* \*." [2]

Petitioner has raised no objection to the procedural formalities employed by respondent in this termination.

The sole question on appeal involves the meaning of "position" in the context of Minn. St. 1971, § 125.12, subd. 6(e). This has been defined as a teacher's "relative place, rank, or standing in the school system." State ex rel. Ging v. Board of Education, 213 Minn. 550, 585, 7 N. W. 2d 544, 562 (1942). Petitioner's argument rests on his contention that the position he holds is that of a ninth grade social studies teacher and that to terminate him for discontinuance of position it would be necessary to eliminate ninth grade social studies from the district's curriculum. We do not agree.

Ging was recently overruled in Foesch v. Independent School Dist. No. 646, 300 Minn. 478, 223 N. W. 2d 371 (1974), insofar as it classified "position" as primary, intermediate, or grammar school divisions. Although Foesch was remanded for additional testimony as to the constitution of a teacher's "position" in the light of today's practice, we are not precluded from reaching a decision herein.

One argument raised by the petitioner in Foesch was that her "position" was that of a second grade teacher. In rejecting this argument, we noted that this definition was too narrow. The trial court reasoned in this case, and we agree, that petitioner's "posi-

---

[2] This section was amended by L. 1974, c. 458. The amendment has no bearing on the outcome of this appeal.

tion" was that of a teacher at the level and in the curricula for which he was certified, secondary teacher of social studies and English. It was this "position" that was discontinued. See, Jordahl v. Independent School Dist. No. 129, 302 Minn. 286, 225 N. W. 2d 224 (1974).

The purpose of Minn. St. 1971, § 125.12, was to prevent arbitrary demotions or discharges of teachers by school boards. As we said in Ging (213 Minn. 568, 7 N. W. 2d 555):

"* * * It was enacted for the *benefit and advantage of the school system* by providing such machinery as would tend to minimize the part that malice, political or partisan trends, or caprice might play. * * * [T]he act does not impair *discretionary* power of school authorities to make the best selections consonant with the public good * * *."

Affirmed.