INDEPENDENT SCHOOL DISTRICT
NO. 621, Respondent,

v.

PUBLIC EMPLOYMENT RELATIONS
BOARD, Appellant,

and

Mounds View Education Association,
et al., Appellants.

Nos. 47899, 48155.

Supreme Court of Minnesota.

April 28, 1978.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Stephen F. Befort, Sp. Asst. Atty. Gen., St. Paul, for PERB.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Eric R. Miller, St. Paul, for Mounds View Ed. Ass'n.

Peterson, Popovich, Knutson & Flynn and Joseph E. Flynn, St. Paul, for respondent.

Heard before YETKA, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal by the Public Employment Relations Board (PERB), Minnesota Education Association (MEA), and Mounds View Education Association (MVEA) from a judgment entered in Ramsey County District Court reversing a decision of PERB which included certain teachers in the Independent School District No. 621 (District) bargaining unit represented by MVEA. The district court found that PERB had misapplied Minn.St. 179.63, subd. 7(f), and reinstated an order of the Bureau of Mediation Services (BMS) excluding the teachers from the bargaining unit. We affirm.

On June 21, 1972, the BMS certified the appropriate bargaining unit for the teachers in the District as follows:

"All professional employees of Independent School District No. 621, St. Paul, Minnesota, who are required to be and are certificated by the State Board of Education, and who are employed more than 14 hours per week and more than 100 work days per year, including those on leave of absence who are guaranteed a position upon their return, excluding supervisory employees, confidential employees, superintendents, assistant superintendents, principals, assistant principals who devote more than 50% of their time to administrative or supervisory duties,

and all other employees." (Italics omitted.)

This description of the bargaining unit was incorporated into the Master Contract between the District and MVEA as the teacher's exclusive representative.

During the second semester of the 1974–1975 school year the District hired 13 teachers for the remainder of the school year, which, in each case, was less than 100 working days. The longest contractual period was 92 days, the shortest was 41 days. Three of the teachers were hired to fill positions created by a temporary enrollment increase.[1] Ten were hired to fill positions left vacant by teachers on leaves of absence. On February 24, 1975, the District sent the employees notices of termination rather than placing them on "unrequested leaves of absence" pursuant to Article VIII of the master contract between MVEA and the District.[2]

On February 25, 1975, MVEA petitioned the BMS for a unit clarification to determine whether the 13 teachers were included. On March 14, 1975, the director of the BMS determined that the 13 teachers were not included in the unit because they were "hired as teachers on a temporary basis for less than 100 work days per year."

On March 26, 1975, MVEA and MEA appealed to PERB. After a hearing on September 26, 1975, PERB reversed the BMS and ordered the unit clarified as follows:

"All professional employees of Independent School District No. 621, St. Paul, Minnesota, who are required to be and are certificated by the State Board of Education, including those on leave of absence who are guaranteed a position upon their return, excluding part-time employees, *employees who hold positions of a temporary character for a period not*

*in excess of 100 working days per year*, supervisory employees, confidential employees, superintendents, assistant principals who devote more than 50% of their time to administrative or supervisory duties, and all other employees." (Italics omitted in part.)

The decision was joined by three members of PERB, but two others dissented and argued for upholding the BMS decision. The PERB found that the two teachers hired to fill the vacancies created by temporary increase in enrollment should not be included in the unit.

The legal issue raised in this appeal is: Are teachers hired for less than 100 working days to fill positions left vacant by other teachers on leaves of absence "public employees" within the meaning of the Public Employees Labor Relations Act (PELRA), Minn.St. 179.61 to 179.76?

PELRA provides a comprehensive scheme regulating labor relations in the public sector. Labor relations between school teachers and their districts are regulated by PELRA. The statutory scheme provides for exclusive representation in appropriate bargaining units defined as follows by Minn.St. 179.63, subd. 17:

" 'Appropriate unit' or 'unit' means a unit of employees, excluding supervisory employees, confidential employees and principals and assistant principals, as determined pursuant to section 179.71, subdivision 3, and *in the case of school districts, the term means all the teachers in the district.*" (Italics supplied.)

The statute defines "teacher" in § 179.63, subd. 13, as—

" * * * any person other than a superintendent or assistant superintendent, employed by a school district in a position for which the person must be certificated by the state board of education; and such

---

1.  MVEA stipulated at the PERB hearing that one of the three teachers was not a "public employee" under Minn.St. 179.63, subd. 7(e), because she worked fewer than 14 hours per week.

2.  Unrequested leave of absence gives a teacher in that status the right of first refusal on jobs in

the District for which he or she qualifies. Recalls are in order of seniority. Minn.St. 125.12, subd. 6a and 6b, provides for this where it is not provided in a collective bargaining agreement. Probationary teachers are entitled to "unrequested leaves of absence."

employment does not come within the exceptions stated in subdivision 7, or defined in subdivisions 8, 9, or 14."[3]

Thus, for the purposes of PELRA, a school district employee is not a teacher and not includable in the appropriate unit if he or she falls within Minn.St. 179.63, subd. 7, which provides:

" 'Public employee' or 'employee' means any person appointed or employed by a public employer except:

"(a) elected public officials;

"(b) election officers;

"(c) commissioned or enlisted personnel of the Minnesota national guard;

"(d) emergency employees who are employed for emergency work caused by natural disaster;

"(e) part time employees whose service does not exceed the lesser of 14 hours per week or 35 percent of the normal work week in the employee's bargaining unit;

"(f) employees who hold positions of a basically temporary or seasonal character for a period not in excess of 100 working days in any calendar year;

"(g) employees of charitable hospitals as defined by section 179.35, subdivision 3."

The provision at issue in the present case, Minn.St. 179.63, subd. 7(f), is problematic because it speaks of "employees who hold positions of a basically temporary or seasonal character" rather than temporary or seasonal employees. The three teachers hired to teach extra classes clearly occupied positions of a temporary nature because the positions themselves began and ended in the second semester of the 1974–1975 year. The case of the remaining 10 is not as clear.

■ Appellants, MVEA, MEA, and PERB, argue that the statute requires inclusion of the 10 employees hired to fill in for teachers on leave because they filled positions of a permanent nature. The "positions" in question were, according to this argument, the positions occupied by the teachers on leave, which were permanent in that there was no contemplation of their ending when the 10 teachers left. If appellants' argument is accepted, the employees would be entitled to bargaining unit status despite the fact that their contracts were limited to less than 100 days.[4] Appellants' construction of the statute was approved by three members of PERB.[5]

Respondent District argues that the positions occupied by the 10 teachers were temporary positions and that the PERB majority as well as appellants confused temporary employees with probationary employees. The dissenting PERB minority and the district court adopted this position.

Each side attempts to use previous decisions of this court under the continuing contract provisions of the teacher tenure law, Minn.St. 125.12, to support its definition of "position."[6] Those cases arose in the context of the discontinuance of a position as a reason for teacher discharge. It is apparent from those cases that a teacher's position in the school system is defined and described in a way that makes the position something separate from the individual occupying it at any given time.

---

3. The grammatical construction of this subdivision makes it unclear as to whether the subdivision 7, 8, 9, and 14 exception applies. We find, as the parties apparently assumed, the legislature intended that if a person comes within the specified subdivisions he or she is *not* a teacher for the purposes of PELRA.

4. By this reading of the statute, any person who was hired to fill in for a teacher in a permanent position would be includable in the unit if that person worked more than 14 hours in 1 week. See, Minn.St. 179.63, subd. 7(e).

5. Administrative interpretations are entitled to great respect, but they are not binding on the court. *Mattson v. Flynn*, 216 Minn. 354, 13

N.W.2d 11 (1944); *Mankato Citizens Tel. Co. v. Commr. of Taxation*, 275 Minn. 107, 145 N.W.2d 313 (1966).

6. *State ex rel. Ging v. Board of Education*, 213 Minn. 550, 7 N.W.2d 554 (1942); *Foesch v. Independent School Dist. No. 646*, 300 Minn. 478, 223 N.W.2d 371 (1974); *State ex rel. Marolt v. Independent Sch. Dist. No. 695*, 299 Minn. 134, 217 N.W.2d 212 (1974); *Jordahl v. Independent School Dist. No. 129*, 302 Minn. 286, 225 N.W.2d 224 (1974); *Hendrickson v. Independent School Dist. No. 319*, 303 Minn. 423, 228 N.W.2d 126 (1975).

The reasoning of the PERB minority, adopted by the trial court, is that each person has his or her own peculiar position, which may be discontinued without discontinuation of function. The reliance on *Jordahl v. Independent School Dist. No. 129*, 302 Minn. 286, 225 N.W.2d 224 (1974), is misplaced. In *Jordahl*, the position occupied by the terminated employee was an English and social studies teacher. His position was discontinued by absorbing its functions into other fulltime jobs. But if Jordahl had not been tenured, he could have been terminated even though his position remained. The definition of "position" in *State ex rel. Ging v. Board of Education*, 213 Minn. 550, 585, 7 N.W.2d 544, 562 (1942), is still valid: [7]

"* * * [R]elative place, rank, or standing in the school system." [8]

An important difference exists between the teacher tenure cases and the present case. In the teacher tenure cases the "position" was being abolished; in the present case the positions are, in effect, occupied by the permanent teachers who have an absolute right to return. [9] Additionally, decisions under PELRA affect employees other than teachers and the decisions construing Minn.St. 125.12 cannot be controlling.

Appellants also rely on an earlier PERB decision, *In the Matter of Dennis Christensen and Hennepin County Welfare Department*, PERB, # 74–IR–12–B, to support their claim. *Christensen* involved a petition for independent review for the firing of a probationary employee of Hennepin County. [10] The county had argued that Christensen was not a public employee because he had only worked for 73 days prior to his being fired and thus was excluded from PELRA by Minn.St. 179.63, subd. 7(f), but PERB held that he was entitled to independent review. The Ramsey County District Court reversed PERB on the ground that Hennepin County's 180 day probationary period took precedence over Minn.St. 179.-76. The court stated, however, that "Minnesota Statute 179.76 [sic] defines public employees and apparently this definition includes probationary employees." PERB relied in part on the *Christensen* decision to support its decision in the present case.

Respondent argues that the *Christensen* case is distinguishable because Christensen was a probationary employee who was hired with the expectation of permanent employment, i. e., he was hired in a permanent position. It concedes that probationary employees are public employees within the purview of the statute.

Appellants contend that if the teachers' probationary status is considered relevant, the court should consider them to be probationary employees. They argue that the contracts expressly make Minn.St. 125.12 applicable and that proper and timely notice of termination required for probationary teachers was given. They further contend that failure to give such notice would have given each teacher a continuing contract for 1975–1976, citing *State ex rel. Marolt v. Independent School Dist. No. 695*, 299 Minn. 134, 217 N.W.2d 212 (1974) and *Poirier v. Independent School Dist. No. 191*, 255 N.W.2d 400 (Minn.1977).

The District argues that the expectation of permanent employment distinguishes true probationary employees from temporary employees, that the termination procedures used are different from those used for probationary employees, and urges that the court look to the substance rather than the form of the transaction, citing *Perry v. Independent School Dist. No. 696*, 297 Minn.

---

7. *State ex rel. Ging v. Board of Education, supra,* was overruled in part by *Foesch v. Independent School Dist. No. 646, supra,* but the definition has been reaffirmed.

8. This is consistent with the ordinary dictionary meaning. See, e. g., Webster's New Collegiate Dictionary (7 ed.) p. 897, which defines "position" in part as "social or official rank or status."

9. This interpretation of the term "position" makes the 10 replacement positions temporary. Thus, even with the clarification by the PERB, they are not included in the bargaining unit.

10. Pursuant to Minn.St. 179.76.

197, 210 N.W.2d 283 (1973). In *Perry* this court held that the teacher tenure law could not be evaded by offering teachers yearly "long-term substitute" contracts. Respondent also cites *Hudson v. Independent School Dist. No. 77*, 258 N.W.2d 594 (Minn. 1977), for authority that a distinction exists between temporary replacements and probationary teachers. *Hudson* construed Minn.St. 123.35, subd. 5, to allow a district to hire replacement teachers for those on leaves of absence longer than 1 year without giving the replacement tenure rights. This would support respondent's claim that the 10 teachers were not probationary if the contracts did not expressly refer to Minn.St. 125.12.

In the present case, however, both the temporary teachers and the school board knew that the positions were for an expressly limited period and that the permanent teachers would return the next school year. We choose to look at the substance of the contract in the present case and we find that the teachers in the present case were hired in temporary positions and were not hired as probationary teachers.[11]

Although the language in the statutes leaves much to be desired as to clarity of expression, we believe the *intent* of the legislature is clear—to exclude those teachers who were employed on a temporary basis for a period not in excess of 100 working days in any calendar year. That is true regardless of whether the temporary employees replaced teachers on leave of absence or to fill positions of a temporary nature. To hold otherwise would mean that those hired because of temporary enrollment increases or needs would be treated differently than those replacing permanent teachers on leave. We must believe that the legislature did not intend such a result. Thus, teachers in both categories are either included in the bargaining unit or they are not. To include these temporary employees in the bargaining unit would violate the intent of the legislature to exclude

short-term, temporary and seasonal employees from PELRA. Inclusion would also undermine the orderly election processes which have been held under PELRA. The district court reached the proper result in this case; the remedy of appellants lies with the legislature, not the courts.

Affirmed.

---

11. The District could have easily avoided the present controversy by drafting the teachers' contracts to clearly articulate its position.