Rolf WALTER, Respondent,

v.

INDEPENDENT SCHOOL DISTRICT NO. 457, TRIMONT, Minnesota, Appellant.

No. 51825.

Supreme Court of Minnesota.

Aug. 20, 1982.

Peterson, Popovich, Knutson & Flynn and James E. Knutson and Patricia A. Maloney, St. Paul, for appellant.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Mark S. Olson, St. Paul, for respondent.

AMDAHL, Chief Justice.

This is an appeal by Independent School District No. 457 from an order of the Martin County District Court declaring that the School District violated Minn.Stat. § 125.12, subd. 6b (1980) by failing to offer respondent Rolf Walter, a teacher who had been placed on unrequested leave of absence, a two-fifths teaching position that had become available.

Walter brought this action under the Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01–.16 (1980). He sought money damages, reinstatement to a full-time position, and a declaration that the School District had violated Minn.Stat. § 125.12, subd. 6b (1980), which provides for the reinstatement of teachers on unrequested leave. The School District contended that Walter did not have a valid teaching license when the two-fifths position became available; that the coaching position that was part of the two-fifths offer conflicted with the coaching position to which he was already assigned; and that it was necessary to hire a female applicant to comply with affirmative action requirements. A court trial was held on May 6, 1980. In its order dated August 30, 1980, the court found that Walter was on unrequested leave of absence with respect to two-fifths of a full-time position at the time that a two-fifths vacancy occurred, and that the School District had violated both the statute and Walter's teaching contract by failing to offer him the two-fifths teaching position. The court ordered the School District to reinstate Walter to a full-time position and to pay damages in the amount of $6,980.00 plus interest. We affirm.

Rolf Walter has been employed by appellant, a small school district in southern Minnesota, since the beginning of the 1969–70 school year. Since his graduation from college in 1964, Walter has earned between 45 and 55 graduate credits. He has taught German, ninth grade mathematics, and both boys' and girls' health and physical education in the Trimont school system. He has also coached boys' basketball and football.

Walter worked full-time for the Trimont School District until the beginning of the 1979–80 school year. Because of budget constraints, the School Board adopted a resolution on April 12, 1979, that placed Walter on unrequested leave of absence without pay or fringe benefits. The leave was to begin at the close of the 1978–79 school year. At the same meeting, the Board passed a motion offering Walter a three-fifths position teaching elementary physical education, along with junior high football and elementary basketball coaching assignments. A three-fifths position is one that requires 4.8 hours of work per day as opposed to the 8 hours per day required of a full-time teacher.

On May 17, 1979, Walter returned an executed contract for the three-fifths position to the School District along with a letter stating:

I am returning the signed copies of the part-time contract that you have offered. For your information I am still on Unrequested Leave for the remainder of a full-time position. If additional positions become available in which I am certified, I am eligible to increase by contract accordingly under MS 125.12. The salary included on the contract is for the time specified. In the event that I am assigned additional hours or the assignment is more than the percentage listed, I will expect a change in this percentage.

Walter received no response to the letter from any member of the School Board.

During the 1977–78 and 1978–79 school years, another Trimont teacher, Barbara Schutt, had held a CETA-funded position teaching girls' health and physical education and coaching girls' volleyball, basketball, and track. Upon learning in July 1979, that no more CETA funds were available for Schutt's position, Superintendent Remme, with the Board's authorization, offered Schutt a two-fifths position teaching health and physical education and the head girls' volleyball and track and assistant girls' basketball coaching positions. The teaching job was to consist of three classes per week of physical education and two classes per week of health.

On August 20, Remme received notification that Schutt was not returning for the 1979–80 school year because she had been offered a full-time job in another state. On the same day, he informed Walter by telephone that Schutt's position was available, and he set up an interview with Walter for the following day. Remme also notified Garla Anderson, who had previously left an application for employment with the School District, that this position was open. Anderson expressed an interest in the job and arranged for an interview on August 22.

During Walter's interview, Remme and Walter discussed the expiration on July 1, 1979 of Walter's teaching license. Remme had not been aware until August 20, when he reviewed Walter's personnel file, that the license had expired. At the interview Walter told Remme that he had applied for

a renewal of the license by hand delivering his application to the Department of Education but had not yet received it. George Droubie, manager of the personnel licensing and placement section of the Minnesota Department of Education, testified at the trial that, under normal circumstances, license renewal applications received at the Department office on July 2 would be processed and returned to the teacher by August 1, but that because of an unusual backlog of applications that summer, license renewals would be considerably delayed. Droubie stated that if Remme had called the Department of Education on August 20, he would have been informed that Walter's license had been renewed. The Department of Education did not notify license applicants of the delay. Superintendent Remme expressed no concern during the interview that Walter's license had not yet been renewed.

On August 22, Remme interviewed Garla Anderson for the position. At the School Board meeting on August 29, 1979, Remme recommended that the Board offer the two-fifths position to Anderson. Remme's recommendation was based on four considerations: that because she was a woman, Anderson could handle girls' health and physical education problems better; that she would be able to supervise the locker room herself; that she was available for all of the coaching duties; and that she was licensed in all of the necessary areas. The School Board approved Remme's recommendation. On September 4, 1979, Anderson executed a contract for the position. Anderson was hired at the lowest level of the salary schedule; her salary for the position was $3,760.65. Because of his 10 years of experience in the Trimont system, Walter would have received $6,900 for the same position. Garla Anderson began working for the School District on September 4, 1979, the same day she returned her signed contract to the School Board. She did not have a copy of her current teaching license on file in the Superintendent's office at that time.

Walter received his renewed license from the Department of Education on September 9, 1979. The license permitted him to teach full-time physical education and coaching and part-time mathematics and health, but he was not relicensed to teach German. Walter began the three-fifths position on August 24, 1979. On August 25 or 30, Remme notified Walter that the Board had decided to offer the two-fifths position to Garla Anderson, but did not discuss with him the reasons for the decision. Sometime in September of 1979, Walter showed Remme a copy of the letter that he had sent the Board along with his executed three-fifths contract. Remme claimed that the original letter was not in Walter's personnel file and that he had not seen it before Walter showed it to him.

The issue raised in this appeal is whether a full-time teacher who has been placed on unrequested leave of absence and who then accepts a part-time contract remains on unrequested leave to the extent of the remainder of a full-time position and is therefore entitled to be offered any part-time position for which he is licensed that is sufficient to bring him to full-time status.

Minn.Stat. § 125.12 (1980) controls the hiring and termination procedures for Minnesota public school teachers. Subdivision 6b provides that teachers may be placed on "unrequested leave of absence," without salary or fringe benefits, when a school board decides that such action may be necessary as a result of discontinuance of a position, insufficient number of pupils, financial limitations, or the consolidation of school districts. A teacher who has been placed on unrequested leave of absence is entitled to reinstatement for the next 5 years. *Id.*, subd. 6b(h). The portions of the statute at issue in this case are subds. 6b(d), (e), and (g), which provide:

(d) Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to other available positions in the school district in fields in which they are licensed. * * *

(e) No appointment of a new teacher shall be made while there is available, on unrequested leave, a teacher who is properly licensed to fill such vacancy, unless the teacher fails to advise the school board within 30 days of the date of notification that a position is available to him, that he may return to employment and that he will assume the duties of the position to which appointed on a future date determined by the board;

\* \* \*

(g) The unrequested leave of absence shall not impair the continuing contract rights of a teacher or result in a loss of credit for previous years of service;

Walter asserts that "reinstate[ment]" as used in subd. 6b(d) can mean only the restoration to the same position or to one equivalent to the position lost. In *State ex rel. Spurck v. Civil Service Board*, 226 Minn. 253, 32 N.W.2d 583 (1948), in which a civil service employee requested reinstatement to his position under Minn.Stat. § 43.24 (1944), this court cited with approval *Berg v. Seaman*, 224 Wis. 263, 271 N.W. 924 (1937). There, the Wisconsin Supreme Court said: "Re-employment is not reinstatement, much less is re-employment in the service in a position entirely different from the service performed by the employee in the position from which she was removed reinstatement." *Id.* at 266, 271 N.W. at 925. *Black's Law Dictionary* (rev. 5th ed. 1979) defines "reinstate" as meaning "[t]o reinstall; to reestablish; to place again in a former state, condition, or office; to restore to a state or position from which the object or person had been removed." *Id.* at 1157. Walter contends, therefore, that subd. 6b(d) is clear on its face, and that by using the word "reinstate" rather than "reemploy," the legislature intended a full-time teacher placed on unrequested leave of absence to be entitled to the first available *full-time* position for which he is qualified.

In *Poirier v. Independent School District No. 191*, 255 N.W.2d 400 (Minn.1977), we stated that "[t]he entire statutory scheme [of § 125.12] centers around protecting teachers from arbitrary discharge while not placing unreasonable restrictions on the

powers which a school board must possess to effectively administer operation of public schools." *Id.* at 404. In *Rochester Education Association v. Independent School District No. 535*, 271 N.W.2d 311 (Minn.1978), we pointed out that "[o]ur application of continuing contract protections to extended term teaching contracts is consistent with the fundamental purpose of the teacher tenure law, protection against summary administrative termination." *Id.* at 315. Walter argues that these precedents emphasize that the purpose of section 125.12 is to prevent arbitrary demotions and discharges of teachers that are unrelated to their ability, and to promote a policy of filling positions with teachers with the most seniority.

The School District contends that "reinstatement" does not necessarily mean the restoration to the *same* position. It emphasizes the statement in subd. 6b(d) that teachers must be reinstated to their former positions, "or, if not available, *to other available positions* in the school district in fields in which they are licensed." (Emphasis added). This statement is taken to mean that if no full-time positions are available, a teacher must be considered fully reinstated upon acceptance of any position, regardless of its size. This argument is based on the School District's interpretation of the word "position," which it derives primarily from *Foesch v. Independent School District No. 646*, 300 Minn. 478, 223 N.W.2d 371 (1974). We commented there that absent legislative clarification, what constitutes a teacher's "position" is an administrative decision that should be left to the school boards. *Id.* at 485–86, 223 N.W.2d at 375. An earlier definition of "position" that was overruled in *Foesch* was reaffirmed in a later case, *Independent School District No. 621 v. Public Employment Relations Board*, 268 N.W.2d 410 (Minn.1978), where we returned to the definition set forth in *State ex rel. Ging v. Board of Education*, 213 Minn. 550, 7 N.W.2d 544 (1942). *See* 268 N.W.2d at 413 n. 7. The *Ging* definition of "position" is a teacher's "relative place, rank, or standing in the school system." 213 Minn. at 585, 7

N.W.2d at 562. The School District asserts that the only "position" to which Walter would be entitled is one that would preserve his seniority rights. It contends that this result is also dictated by subdivision 6b(g), which provides that an unrequested leave of absence "shall not impair the continuing contract rights of a teacher or result in a loss of credit for previous years of service." Contract rights thus would be defined as only a teacher's *seniority* rights, not any additional rights as provided by the contract between the teacher and the school board. The statute, however, refers to "continuing contract rights * * * *or* * * * credit for previous years of service," Minn. Stat. § 125.12, subd. 6b(g) (1980) (emphasis added). This language may be interpreted as meaning that "continuing contract rights" are not synonymous with seniority rights, and in fact constitute something more. Under this interpretation, Walter's contract rights would include all of the rights to which he was entitled under his original, full-time contract, including the right to be reemployed on a full-time basis.

The School District argues that, even if Walter would be otherwise entitled to full reinstatement, by taking the three-fifths position Walter either waived his rights under the original contract or accepted a modification of the contract. Minn.Stat. § 125.-12, subd. 4 (1980) provides for the modification of contract provisions as follows:

> A teacher who has completed his probationary period in any school district * * * shall have a continuing contract with such district. *Thereafter, the teacher's contract shall remain in full force and effect, except as modified by mutual consent of the board and the teacher * * *.*

*Id.* (emphasis added). The statute requires *mutual* modification; however, it is apparent that Walter intended neither a waiver nor a modification. The letter that he attached to the executed three-fifths contract very clearly stated that he considered himself still to be on unrequested leave of absence to the extent of a two-fifths position. A teacher's contract rights may be waived only by an intentional and volun-

tary act. In *Perry v. Independent School District No. 696*, 297 Minn. 197, 210 N.W.2d 283 (1973), we stated:

[Since] tenure rights can only be waived if waiver is clearly intended, we hold that plaintiff did not waive her continuing contract rights by accepting a limited contract. She was given no choice between a regular and a substitute contract, a fact which indicates that she has not intentionally and voluntarily waived her rights.

*Id.* at 207, 210 N.W.2d at 290. Walter was in a similar position: the only choice he had was between the three-fifths contract and no job at all. The School District's argument that he waived his previous contract rights or modified the contract by accepting the three-fifths contract, especially in light of his having insisted at the same time that he was still entitled to full-time work, is not persuasive.

The School District maintains that it was justified in offering the two-fifths position to Garla Anderson because Walter did not have a valid teaching license on the day of his interview with Remme. This argument is unconvincing because no one on the School Board expressed any concern about the license prior to this litigation. Furthermore, Garla Anderson did not have a current license on file when she began work, and Remme was aware that between two and four other teachers were working without current licenses. The District also contends that a decision declaring teachers to be entitled to reinstatement to positions of the same size as those they have lost would lead to a disruption in the scheduling of classes. In some cases, the District argues, teachers would be permitted to change jobs during the course of a school year, thus breaking the continuity of the students' education and interfering with school districts' administration of their programs.

■ Section 125.12 was not intended to be an unreasonable restriction on the effective administration of the public schools. *Keller v. Independent School District No. 742*, 302 Minn. 324, 328, 224 N.W.2d 749, 752 (1974). A school district may exercise its own discretion in hiring the most qualified

teachers. In *Foesch v. Independent School District No. 646*, 300 Minn. 478, 223 N.W.2d 371 (1974), we held:

A board of education, when deciding whether to hire or to terminate a teacher, is acting in an administrative capacity, and a reviewing court on appeal can set aside that decision only when the determination of the administrative agency is fraudulent, arbitrary, unreasonable or not supported by substantial evidence on the record; not within its jurisdiction; or based on an erroneous theory of law.

*Id.* at 485, 223 N.W.2d at 375. Section 125.12 does not limit a school board's discretion in making hiring decisions; nevertheless, it requires a school district to follow certain requirements when reinstating already tenured teachers employed by the district. The Trimont School District could have concluded with good reason that, in general, a woman might be more effective as a girls' physical education teacher than a man would be. However, Walter, an experienced teacher, had previously taught girls' physical education in the district without significant difficulties, and the State Board of Education had issued him a license to do so. Garla Anderson, on the other hand, was a less experienced teacher who was new to the district. The essential issue, which is whether a teacher on unrequested leave has the right to be reinstated to a position equivalent to the one he lost, is obscured in this case by the fact that a male teacher and a female teacher were competing for the same girls' physical education position. The issue might have been different if both Anderson and Walter had come from outside the district and Anderson had been hired to remedy an actual deficiency in the District's affirmative action hirings. Here, however, a tenured teacher whose actual qualifications were not disputed was not offered the two-fifths position on the ground that the District had already fully reinstated him by having previously given him the three-fifths position.

The School District claims that its hiring of Anderson was necessary to satisfy affirmative action requirements. The Tri-

mont School District employed a total of 22 teachers. Of these, 10 were female; of the district's 13 secondary teachers, 3 were female. The District may have reasonably believed that more women should be hired at the secondary level; nevertheless, it had never been advised that it actually would be in violation of affirmative action guidelines if it did not hire Anderson.[1]

■■■ We believe a school district could reasonably conclude that a woman might be a better girls' physical education instructor than a man would be. Such a determination, made as a part of a hiring decision, generally would be an administrative decision not subject to review unless found to be arbitrary or unreasonable. *See Foesch v. Independent School District No. 646*, 300 Minn. 478, 485, 223 N.W.2d 371, 375 (1974). Here, however, the School District has interpreted section 125.12, subd. 6b, as providing that a formerly full-time teacher may be considered fully reinstated upon being given a part-time position; this is a question of law that is reviewable on appeal. We conclude that the School District's interpretation of the statute is incorrect. The interpretation suggested by the School District could cause serious harm to many teachers. If teachers may be considered "reinstated" upon accepting any job that the School Board offers, those teachers might find themselves in the difficult situation of being forced to choose between accepting a part-time job with a substantially reduced salary and rejecting the part-time position and remaining unemployed, with no more than the hope that a full-time position might eventually become available. The legislature, by using the word "reinstate" rather than "reemploy" evidently intended subd. 6b to mean that a school district must make positions comparable in size to the positions lost available to teachers on unrequested leave of absence.

We have consistently interpreted the purpose of section 125.12 to be the protection of teachers' employment and seniority rights. *See, e.g., Rochester Education Association v. Independent School District No. 535*, 271 N.W.2d 311, 315 (Minn.1978); *State ex rel. Marolt v. Independent School District No. 695*, 299 Minn. 134, 141–42, 217 N.W.2d 212, 217 (1974). We do not believe that the legislature intended to give school boards the discretion to conclude, independently, that a teacher should not be reinstated pursuant to subd. 6b because he or she lacks certain "special qualifications" beyond those required by the licensing authority. Both the Department of Education and, at one time, the Trimont School District, considered Rolf Walter to be sufficiently qualified to teach girls' physical education. If certain exceptions must be made to ensure the availability of female teachers for positions of the type in question, the Legislature may amend the statute accordingly. As it is now written, however, section 125.12 contains no such exceptions. Walter possesses all of the qualifications that the statute requires for full reinstatement: a license and seniority. It is evident that, but for the fact that he is male, he would have been awarded the position. Subdivision 6b(d) requires that teachers be reinstated to the same positions they held or "to other available positions in the school district in fields in which they are licensed." Pursuant to subd. 6b(d), Walter must be awarded the two-fifths girls' physical education position. To permit the school board to require additional qualifications would deprive him and other tenured, experienced teachers of the protection that section 125.12 was intended to provide.

Affirmed.

WAHL, Justice (dissenting).

I concur with the opinion of the majority insofar as it holds that a full-time teacher who has been placed on unrequested leave of absence and who then accepts a part-time contract remains on unrequested leave to the extent of the remainder of a full-

---

1. The School District's affirmative action argument is unpersuasive in light of the fact that it was not raised until a late stage in the litigation; furthermore, Minn.Stat. § 125.12, subd. 6b(c) (1980), does not permit the use of an affirmative action defense here, where the plaintiff's right to reinstatement is contested by a new teacher. The purpose of the statute is to prevent a less senior teacher from being placed on unrequested leave.

time position. I respectfully dissent, however, from the further holding of the majority opinion that the teacher is therefore entitled to be offered any part-time position that is sufficient to bring him to full-time status and for which he is licensed when that position is one for which, as here, sound educational policy may require special qualifications.

The Trimont School District did, indeed, wrongly conclude that Minn.Stat. § 125.12, subd. 6b (1980) allows a formerly full-time teacher to be considered fully reinstated upon being given a part-time position. We must still recognize, however, that a school district's decision to hire at least one woman as a physical education and health instructor for junior and senior high school girls is an administrative decision not subject to review unless found to be arbitrary and unreasonable. *See Foesch v. Independent School District No. 646*, 300 Minn. 478, 485, 223 N.W.2d 371, 375 (1974). The decision of the Trimont School District to hire a two-fifths-time woman physical education and health instructor for one-half the secondary school student body, the female half, while a male half is being provided with one full-time male physical education instructor, is neither arbitrary nor unreasonable, and hardly, under the circumstances, the "direct discrimination" the district court found it to be.

This is not to say or even to suggest that girls and young women should be taught only by women, and boys and young men taught only by men. In the best of all possible educational worlds, girls and boys, young men and young women would be taught by teachers of both sexes in every field of learning.[1] This is not the best of all possible educational worlds, and we proceed toward it but slowly.[2]

The Trimont School District discovered the educational advantages of having at least one woman physical education instructor with its first such teacher, Garla Anderson's CETA-funded predecessor, Barbara Schutt. The district wanted to continue to make that educational opportunity available to its female students. Superintendent Harold Remme, in recommending to the school board at its August 29, 1979, meeting that Garla Anderson be offered the two-fifths position, gave the following reasons: (1) that it is important that female students have a woman teacher in physical education and health so that they can ask questions and be counseled in very personal matters; (2) that the girls' locker room can more adequately be supervised by a female physical education teacher; and (3) that it is important to have a female coach for girls' sports, both to serve as a role model and to supervise the locker room. Experienced as Mr. Walter may be as a physical education instructor, he does not possess these qualifications. Much as he needs and should have a full-time teaching position within the district, he should not have that position at the educational expense of the girls in the Trimont junior and senior high school. The administrative decision of the Trimont School District in this regard, being neither arbitrary nor unreasonable, should be upheld.[3]

1. "Facing the Future, Education and Equity for Females and Males, Considerations for Leaders in Elementary-Secondary Education," a brochure prepared under contract in 1980 for the Women's Educational Equity Act Program of the United States Department of Education, states, at page 22:

Sex stereotyping and sex differentiation limit the development of students of both sexes. They deny both females and males the opportunity to explore, discover, and develop their own individual abilities and interests; to understand the complexity and diversity of women and men; and to appreciate and respect the historical and contemporary contributions, perspectives and concerns of both sexes. They deny students the opportunity to gain experience in working cooperatively with individuals of both sexes in a variety of situations, and to acquire the flexibility and range of skills necessary to function effectively in our changing society * * *.

2. Ten of the 13 secondary teachers in the Trimont School District are men.

3. The district's affirmative action defense would be available to it except that Minn.Stat. § 125.12, subd. 6b(c) does not permit its use here where the plaintiff's right to reinstatement is contested by a new teacher. The statute

PETERSON, Justice (dissenting).

I join in the dissent of Justice Wahl.

KELLEY, Justice (dissenting).

I join in the dissent of Justice Wahl.

applies to prevent a less senior teacher from being put on unrequested leave.