**Peter JURKOVICH, Relator,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 708, TOWER–SOUDAN, Minnesota, Respondent.**

**No. C4–91–1227.**

Court of Appeals of Minnesota.

Dec. 10, 1991.

Douglas L. Skor, Neal T. Buethe, Briggs and Morgan, P.A., St. Paul, for relator.

James E. Knutson, Stephen M. Knutson, Knutson, Flynn, Hetland, Deans & Olsen, P.A., St. Paul, for respondent.

Independent School Dist. No. 708, pro se.

Considered and decided by SHORT, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

Respondent school board discontinued relator Peter Jurkovich's 1.0 full time equivalency (FTE) tenured position as superintendent, placed him on unrequested leave of absence (ULA) at the end of the 1990–1991 school year, and then offered to reinstate him in a combined .5 FTE non-tenured superintendent and .5 FTE tenured principal position for 1991–1992. On appeal, Jurkovich argues the school board violated Minn.Stat. § 125.12 (1990) and acted upon an erroneous theory of law in failing to reinstate him in a 1.0 FTE tenured position. We reverse and remand.

## FACTS

On July 1, 1981, relator Peter Jurkovich was hired as superintendent by Independent School District No. 708. He subsequently acquired continuing contract rights in this position subject to the protections afforded by Minn.Stat. § 125.12, subd. 6b (1990).[1] At the time Jurkovich acquired tenure, superintendents were considered "teachers" for purposes of section 125.12, and thus were accorded all of the protections under section 125.12, subd. 6b. In 1990, section 125.12 was amended, removing superintendents from the definition of "teacher" for purposes of section 125.12, subd. 6b, and thereby removing superintendents from subdivision 6b's tenure protections. 1990 Minn. Laws ch. 562, art. 8, § 29. The amendments provided that the change removing superintendents from tenure protections applies only to employment contracts entered into or modified after July 1, 1990. *Id.* at § 47.

In August 1989, Jurkovich entered into an employment contract with the school district which was to remain "in full force and effect, except if modified by mutual consent of the school board and the superintendent or unless terminated as provided by law or written resignation." Following passage of the 1990 amendments to section 125.12, the district offered Jurkovich a new contract on August 1, 1990, with the same salary terms as the 1989 contract. Rather than signing this contract, Jurkovich chose to continue service under his old contract. On August 9, 1990, the district board passed a resolution not to renew Jurkovich's contract, arguing that the district and Jurkovich were "parties to a modified employment contract" subject to the amendments to section 125.12. On appeal by Jurkovich, this court held there had been no modification of Jurkovich's continuing contract after July 1, 1990, and therefore he retained continuing contract rights under his earlier contract. *Jurkovich v. Indep. School Dist. No. 708*, 467 N.W.2d 360, 362–63 (Minn.App.1991). That decision was released on March 26, 1991.

On April 25, 1991, the school board passed a resolution to discontinue Jurkovich's tenured 1.0 FTE superintendent position and to place him on ULA due to discontinuance of the position and/or lack of pupils and/or financial limitations. At a subsequent meeting on May 20, 1991, the board stated its intention to consider options for the superintendent position for the 1991–92 school year, including a combined superintendent and secondary school principal position or a combined superintendent and elementary school principal position.

Following notification of his proposed placement on ULA, Jurkovich requested a ULA hearing, which was held on May 23, 1991. At the hearing, Jurkovich did not contest his placement on ULA, but argued that under Minn.Stat. § 125.12, subd. 6b he has a right to be reinstated to a fully

---

1. "Continuing contract rights" under Minn.Stat. § 125.12 are equivalent to "tenure rights" under the Teacher Tenure Act, Minn.Stat. § 125.17 (1990). Since the two terms identify the same legal concept, they are used interchangeably. *See Westgard v. Independent School Dist. No. 745*, 400 N.W.2d 341, 344 (Minn.App.1987), *pet. for rev. denied* (Minn. Apr. 17, 1987).

tenured 1.0 FTE position. The board argued that in reinstating Jurkovich, it has discretion in deciding which position to offer him, so long as the position to which he is reinstated is one for which he has proper licensure and seniority. It further stated its intention to offer him reinstatement to a .5 FTE superintendent and .5 FTE tenured secondary school principal position.

In a decision issued on June 4, 1991, the hearing examiner recommended that Jurkovich be placed on ULA and offered reinstatement to the .5 FTE superintendent and .5 FTE secondary principal position for the 1991–92 school year "or, if the School Board in its discretion determines otherwise, to such other full-time position as the School Board shall determine, for which Jurkovich is licensed." On June 13, 1991, the board adopted the hearing examiner's recommendations. It placed Jurkovich on ULA and offered to reinstate him in a combined .5 non-tenured superintendent and .5 tenured secondary school principal position. The contract offered to Jurkovich expressly provides that the .5 superintendent position is not subject to continuing contract rights under Minn.Stat. § 125.12.

## ISSUE

When a superintendent who acquired continuing contract rights prior to July 1, 1990 is placed on ULA and reinstated, does Minn.Stat. § 125.12, subd. 6b(h) (1990) prohibit reinstatement to a position with fewer continuing contract rights?

## ANALYSIS

 A school board's decision concerning reinstatement of a tenured employee following placement on ULA will be set aside only if it is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law. *Harms v. Indep. School Dist. No. 300*, 450 N.W.2d 571, 574 (Minn.1990).

Minn.Stat. § 125.12, subd. 6b governs the placement on ULA and reinstatement of a superintendent who entered into a continuing contract with a school district prior to July 1, 1990. *Jurkovich*, 467 N.W.2d at 362. Subdivision 6b provides:

> **Subd. 6b. Unrequested leave of absence.** The school board may place on unrequested leave of absence * * * as many teachers as may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts * * * * In placing teachers on unrequested leave, the board shall be governed by the following provisions:
>
> \* \* \* \* \* \*
>
> (e) Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to other available positions in the school district in fields in which they are licensed. Reinstatement shall be in the inverse order of placement on leave of absence * * * *;
>
> (h) The unrequested leave of absence shall not impair the continuing contract rights of a teacher or result in a loss of credit for previous years of service; * * * *

Minn.Stat. § 125.12, subd. 6b (1990). By reinstating Jurkovich to a combined .5 non-tenured and .5 tenured position, the district violated the clear and unambiguous language of subdivision 6b(h) prohibiting impairment of continuing contract rights through placement on ULA, because prior to being placed on ULA Jurkovich had continuing contract rights in a full 1.0 FTE position.

Our application of Minn.Stat. § 125.12, subd. 6b(h) in this case is supported by *Walter v. Indep. School Dist. No. 457*, 323 N.W.2d 37 (Minn.1982). In construing this provision, the supreme court stated:

> [t]he statute, however, refers to "continuing contract rights * * * *or* * * * credit for previous years of service," Minn.Stat. § 125.12, subd. 6b [ (h) ] (1980) (emphasis added). This language may be interpreted as meaning that "continuing contract rights" are not synonymous with seniority rights, and in fact consti-

tute something more. Under this interpretation, Walter's contract rights would include all of the rights to which he was entitled under his original, full-time contract, including the right to be reemployed on a full-time basis.

*Walter*, 323 N.W.2d at 41. The supreme court held that a full-time teacher who had been placed on ULA and who then accepted a .6 FTE part-time position remained on ULA to the extent of the remainder of his full-time position, and the school district was required to offer him any part-time position for which he was licensed which would be sufficient to restore him to full-time status. *Id.* at 43.

On remand, it is within the school board's discretion, subject to the reinstatement provisions of subdivision 6b, to determine the most suitable position or combination of positions into which to reinstate Jurkovich. *See Harms, supra,* We hold only that he cannot be reinstated to a position with fewer continuing contract rights than the fully tenured 1.0 FTE position which he held before being placed on ULA.

## DECISION

Because relator had acquired continuing contract rights in a 1.0 FTE superintendent position prior to July 1, 1990 and prior to being placed on ULA, the school district violated Minn.Stat. § 125.12, subd. 6b(h) by reinstating him to a combined position in which he had continuing contract rights in only a .5 FTE position.

Reversed and Remanded.